## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY BOND AND RICHARD BOND, INDIVIDUALLY, and AS PARENTS AND NATURAL GUARDIANS OF CHRISTINA BOND, | No. 1:20-cv-08487-NLH-AMD |
| Plaintiffs, | **OPINION** |
| v. | |
| SOLVAY SPECIALTY POLYMERS, USA, LLC, et al., | |
| Defendants. | |

| | |
|---|---|
| THERESA SLUSSER AND WILLIAM SLUSSER, INDIVIDUALLY, and AS PARENTS AND NATURAL GUARDIAN OF ALEXANDER SLUSSER | No. 1:20-cv-11393-NLH-AMD |
| Plaintiffs, | |
| v. | |
| SOLVAY SPECIALTY POLYMERS, USA, LLC, et al., | |
| Defendants. | |

| | |
|---|---|
| TAMMY O'LEARY and CORBY DEESE, | No. 1:21-cv-00217-NLH-AMD |
| Plaintiffs, | |
| v. | |
| SOLVAY SPECIALTY POLYMERS, USA, LLC, et al., | |
| Defendants. | |

|  |  |
|---|---|
| CARLY CORRAR and SHIRLEY BOND,<br><br>              Plaintiffs,<br><br>      v.<br><br>SOLVAY SPECIALTY POLYMERS, USA, LLC, et al.,<br><br>              Defendants. | No. 1:21-cv-00452-NLH-AMD |
| SHIRLEY BOND,<br><br>    Plaintiff,<br><br>v.<br><br>SOLVAY SPECIALTY POLYMERS, USA, LLC, et al.,<br><br>              Defendants. | No. 1:21-cv-11203-NLH-AMD |

**APPEARANCES**:

STEVE PHILLIPS
PHILLIPD & PAOLICELLI, LLP
747 THIRD AVENUE, 6TH FLOOR
NEW YORK, NY 10017

VICTORIA ELIZABETH PHILLIPS
LEVY PHILLIPS KONINGSBERG LLP
800 THIRD AVENUE
NEW YORK, NY 10022

ROBERT E. LYTLE
ARNOLD CARL LAKIND
SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, PC
QUAKERBRIDGE EXECUTIVE CENTER
101 GROVERS MILL ROAD - SUITE 200
LAWRENCEVILLE, NJ 08648

    *On behalf of Plaintiffs.*

THEODORE V. WELLS, JR.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064

 *On behalf of Solvay Specialty Polymers, USA, LLC.*

MICHELLE GITLEN
IRENE HSIEH
MARJAN MOUSSAVIAN
JOHN DAVID NORTH
GREENBAUM, ROWE, SMITH & DAVIS LLP
99 WOOD AVE. SOUTH
ISELIN, NJ 08830

 *On behalf of Arkema, Inc.*

SALVATORE PIETRO D'ALIA
LANNY STEVEN KURZWEIL
RYAN A. RICHMAN
NATALIE SABRINA WATSON
MCCARTER & ENGLISH
100 MULBERRY STREET
NEWARK, NJ 07102

 *On Behalf of E. I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC.*

DONALD J. CAMERSON, II
JAMES WYLIE CROWDER, IV
BRESSLER, AMERY & ROSS, ESQS.
325 COLUMBIA TURNPIKE
PO BOX 1980
FLORHAM PARK, NJ 07932

 *On Behalf of The 3M Company.*

**<u>HILLMAN</u>**, **District Judge**

 Before the Court are Defendants' motions to dismiss the complaints in the above captioned related cases.  For the reasons expressed below, the motions will be denied except for with respect to the standalone counts for punitive damages.

## <u>BACKGROUND</u>

Plaintiffs[1] in these cases are individuals or individuals suing on behalf of individuals who allege that they have suffered severe medical conditions as a result of the disposal of toxic waste by Defendants[2].  Plaintiffs claim harm from the disposal of chemicals such as poly- and perfluoroalkyl substances ("PFAS"), particularly perflouoronaonanoic acid ("PFNA") and perfluorooctanoic acid ("PFOA") and other toxins that result from the degradation of those compounds as well as other toxins that were released into the environment as a byproduct of Defendants' activities, such as heavy metals, paints and dyes, and industrial alcohols and solvents.  (<u>See, e.g.,</u> No. 1:20-cv-08487-NLH-AMD, ECF 36 ("Bond 1 Complaint") at

---

[1] Plaintiffs are Kimberly Bond and Richard Bond, Individually and as the Parents and Natural Guardians of Plaintiff Christina Bond (the "<u>Bond 1 Plaintiffs</u>"), <u>Kimberly Bond, et al v. Solvay Specialty Polymers, USA, LLC et al</u>, Civ. Action No. 1:20-cv-08487; Theresa Slusser and William Slusser, Individually and as the Parents and Natural Guardians of Plaintiff Alexander Slusser (the "<u>Slusser Plaintiffs</u>"), <u>Slusser v. Solvay Specialty Polymers, USA, LLC, et al</u>, Civ. Action No. 1:20-cv-11393; Tammy O'Leary and Corby Deese (the "<u>O'Leary Plaintiffs</u>"), <u>O'Leary, et al v. Solvay Specialty Polymers, USA, LLC, et al</u>, Civ. Action No. 1:21-cv-00217; (the "<u>Corrar Plaintiffs</u>") Carly Corrar and Shirley Bond <u>Corrar v. Solvay Specialty Polymers, USA, LLC, et al</u>, Civ. Action No. 1:21-cv-00452; (the "<u>Bond 2 Plaintiff</u>"), <u>Shirley Bond v. Solvay Specialty Polymers, USA, LLC et al</u>, Civ. Action No. 1:21-cv-11203.

[2] Defendants are Solvay Special Polymers, USA. LLC ("<u>Solvay</u>"), Arkema, Inc. ("<u>Arkema</u>"), E. I. du Pont de Nemours and Company ("<u>DuPont</u>"), The Chemours Company, and The Chemours Company FC, LLC ("<u>Chemours</u>"), The 3M Company ("<u>3M</u>").

3).  Plaintiffs all contend that the prolonged exposure to these
toxins irreparably harmed them.  They claim that their exposure
occurred due to the travel of disposed materials from
Defendants' plants by way of soil, water, and air and that the
toxins contaminated their personal water supplies.  (Id. at 5).

The plant from which Plaintiffs contend that Arkema, and
then Solvay, dispersed the toxins at issue was located at 10
Leonard Lane, West Deptford, NJ 08085.  The plant from which
Plaintiffs contend that DuPont and Chemours released toxins was
located at 67 Canal Road and Route 130, located in Pennsville
and Carneys Point Townships, NJ 08023. Plaintiffs alleged that
3M supplied the Defendants with sodium perfluorooctanoate
(NaPFO) and PFOA which was used at those two plants.  (Id. at
13-15).  The Court's independent review of the distance between
the plants and the addresses of Plaintiffs reveal that
Plaintiffs' residences were within several miles of either of
the plants.[3]  Attached to the complaints[4] in each of the actions

_____

[3] Courts may take judicial notice of the distance between two
geographical locations. MARIANN LORD, Plaintiff, v. ACCENTURE
LLP, Defendant., 2021 WL 5980339, at *5 n.6 (D.N.J. Dec. 17,
2021).

[4] Though the Slusser Plaintiffs do not attach the notice to their
complaint, the refer to it and it appears that based on the
language of the complaint, that the Slusser Plaintiffs intended
to attach it.  (Slusser Complaint at 11).  Nevertheless, the
Court may take judicial notice of the notice as it is a public
report prepared by a governmental authority and has indicia of
authenticity.  See Sturgeon v. Pharmerica Corp., 438 F. Supp. 3d

is a report by the New Jersey Department of Environmental
Protection (the "NJDEP") that contained findings that Defendants
contaminated New Jersey's natural resources.

The report, dated March 25, 2019, indicates the findings of
the NJDEP that Defendants each were "responsible for the
significant contamination of New Jersey's natural resources,
including the air and waters of the State, with poly- and
perfluoroalkyl substances ('PFAS'), Including perfluorononanolc
acid ('PFNA'), perfluorooctanoic acid ('PFOA'), and
perfluorooctanesulfonlc acid ('PFOS'), and their replacement
compounds, Including but not limited to 'GenX'[.]" (See Bond 1
Complaint, ECF 36-1 at 2).  Particularly relevant to Plaintiffs'
claims is NJDEP's finding of these toxins within just a few

_____

246, 259 (E.D. Pa. 2020); Roane Cty., Tennessee v. Jacobs Eng'g
Grp., Inc., 2020 WL 2025613, at *2 (E.D. Tenn. Apr. 27, 2020).
For avoidance of any doubt, though, the Court emphasizes that in
taking judicial notice of the notice, it is not taking the
factual findings in the report as proven to be true, but rather
merely acknowledging the existence of such findings by the
NJDEP. Overfield v. Pennroad Corp., 146 F.2d 889, 898 (3d Cir.
1944)(noting that "Courts can and do take judicial notice of"
governmental reports such as "Congressional proceedings" and
"the existence of facts disclosed by them"); In re Amarin Corp.
PLC Sec. Litig., 2021 WL 1171669, at *7 (D.N.J. Mar. 29, 2021)
(Explaining the nuance is that "it is improper for a court to
take judicial notice of the veracity and validity of a public
document's contents when the parties dispute the meaning and
truth of the contents.") (internal quotation marks omitted);
Sturgeon, 438 F. Supp. 3d at 259 ("The Court declines to
foreclose all proof on such a central question by looking
outside the record at the motion-to-dismiss stage, so these
materials will be judicially noticed only for their
existence and not for their truth.").

miles of Plaintiffs' homes, sometimes at properties farther from the plants than Plaintiffs' residences were from the plants. (See infra, Discussion, Section III.a).

## I.   The Bond 1 Plaintiffs

The Bond 1 Plaintiffs claim that Christina Bond was exposed to toxins released by Defendants in utero and afterward that resulted in lifelong cognitive damage.  Specifically, Plaintiffs allege that Christina suffers from conditions such as brain damage, speech impairment, deletion of a chromosome, and the inability to care for herself.  (Bond 1 Complaint at 2-3). Christina was born on April 6, 1978.  The Bond 1 Plaintiffs resided at 43 Nortonville Road, Swedesboro, NJ 08085 from 1977 until 1989.  They currently reside at 13 Nortonville Road, Swedesboro, NJ 08085.  Plaintiffs contend that the exposure pertinent to their case occurred "primarily in or about the above addresses and in the adjacent neighborhood." (Id. at 6).

## II.   The Slusser Plaintiffs

The Slusser Plaintiffs claim that Alexander Slusser was exposed to toxins released by Defendants into the environment in utero and during the first years of his life that resulted in lifelong medical conditions.  Plaintiffs allege that Alexander suffers from conditions such as brain damage, Attention-Deficit/ Hyperactivity Disorder, motor deficits, and the inability to live unassisted.  (No. 1:20-cv-11393-NLH-AMD, ECF 32 ("Slusser

Complaint") at 2).  Alexander was born on March 27, 1995. (Id. at 5).  The Slusser Plaintiffs lived at 258 G Street, Carneys Point, NJ from 1993 until 1996 and allege that the exposures occurred at that address.  (Id. at 6).

### III. **The O'Leary Plaintiffs**

The O'Leary Plaintiffs claim that Tammy O'Leary and Corby Deese were each exposed to toxins released into the environment that resulted in chronic medical conditions.  For Tammy, they allege that she suffers from conditions such as breast cancer, gastrointestinal disease and high cholesterol.  (No. 1:21-cv-00217-NLH-AMD, ECF 2 ("O'Leary Complaint") at 2).  For Corby, they allege that he suffers from conditions such as high cholesterol, prostate disease, and gastrointestinal disease. (Id.)  The O'Leary Plaintiffs allege that Tammy has lived at 36 Jackson Street, Swedesboro, NJ 08085 since 2007 and that prior to that she lived at 36 Home Street, Gibbstown, NJ 08027.  (Id. at 5-6).  They allege that Corby lived at the 36 Jackson Street address since 1997 and that prior to that, since 1992 he lived at 1414 Storie Avenue, West Deptford, NJ 08093.  (Id.)  The O'Leary Plaintiffs allege that they were exposed to toxins released by Defendants while they were residing at these addresses and their contact with such toxins is what caused their medical conditions.  (Id. at 2-6).

IV.  **The Corrar Plaintiffs**

The Corrar Plaintiffs seek to recover damages for medical conditions suffered by Carly Corrar, for which they claim that toxins released by Defendants caused.  They allege that these medical conditions include physical and cognitive developmental delays, Attention-Deficit/ Hyperactivity Disorder, and joint issues, among other ailments.  (No. 1:21-cv-00452-NLH-AMD, ECF 1, ("Corrar Complaint") at 2).  Carly was born on May 31, 1996. (Id. at 5).  Plaintiffs allege that Carly resided at 50 North Railroad Ave., Pedricktown, NJ 08067 from her birth until 2018. (Id.)  At the age of 3, when her parents separated, Carly visited her father on the weekends at 370 US-130, Penns Grove, NJ 08069.  (Id.)  Plaintiffs alleged that from 1962 through 1981 and during the year before Carly's birth, Carly's parents lived at 24 Woodstown, Pedricktown, NJ 08067. (Id. at 6).  Other than that, after 1981 and until Carly's birth, Carly's parents resided at the 50 North Railroad Ave. address.  (Id.)  Carly currently resides at 95 ½, Apt. A, Walnut Street, Penns Grove, NJ 08069.  (Id.)  Plaintiffs allege that Carly's exposure to these toxins occurred at these addresses but primarily in utero and early childhood.  (Id.)

V.  **The Bond 2 Plaintiff**

The Bond 2 Plaintiff, Shirley Bond, is also one of the Plaintiffs in the Corrar Action.  She alleges that she suffers

from medical conditions such as cervical myofascial pain syndrome, osteoporosis, and a congenital heart defect as a result of exposure to toxins released by Defendants.  (No. 1:21-cv-11203-NLH-AMD, ECF 1 ("Bond 2 Complaint") at 2, 5).  Shirley was born on January 2, 1962 and lived at 24 Woodstown, Pedricktown, NJ 08067 until 1981 and for another year during the 1990s.  (Id. at 5).  Other than that, Shirley has lived at 50 North Railroad Ave., Pedricktown NJ 8067 since 1981.  (Id.)  She argues that she was exposed to the toxins dispersed by Defendants while living at these addresses.  (Id.)

**DISCUSSION**

I.   **Subject Matter Jurisdiction**

This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332.

II.  **Standard for Rule 12(b)(6) Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d
203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before Twombly."). "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at
570).

A court in reviewing a Rule 12(b)(6) motion must only
consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.
S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999). A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document." Pension Benefit Guar. Corp.
v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.
1993). If any other matters outside the pleadings are presented
to the court, and the court does not exclude those matters, a
Rule 12(b)(6) motion will be treated as a summary judgment

motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

III. **Analysis**

All of the Complaints at issue here allege counts for negligence, gross negligence and recklessness, private nuisance, public nuisance, past and continuing trespass, strict liability (abnormally dangerous activities), strict liability (failure to warn), strict liability (defective design), and punitive damages.  Defendants filed the same motions to dismiss across all five of the cases here.  Rather than attacking each count in the complaints, they attack a few discrete purported defects. Namely, they argue that Plaintiffs have not alleged causation, that Plaintiffs have not alleged that Defendants worked with or produced all of the toxins alleged to have been emitted into the environment, that this Court's previous holdings in similar cases are distinguishable, and that punitive damages cannot be plead as a standalone count under New Jersey law.  The Court will take each of these arguments in turn.

a. **Causation and Notice Pleading**

Defendants' arguments on causation touch on two nuances: whether Plaintiffs have adequately alleged that the came into contact with the toxins and whether the toxins were the proximate cause of their medical ailments.

At the outset, the Court notes that these kinds of toxic tort cases often present unique difficulties in showing

13

causation due to the latency in the occurrence of injuries and the confluence of many medical factors over time.  James v. Bessemer Processing Co., 714 A.2d 898, 909 (1998) ("In toxic tort cases, the task of proving causation is invariably made more complex because of the long latency period of illnesses caused by carcinogens or other toxic chemicals. The fact that ten or twenty years or more may intervene between the exposure and the manifestation of disease highlights the practical difficulties encountered in the effort to prove causation.") The Court will keep that peculiarity in these types of cases in mind as it analyzes whether Plaintiffs have sufficiently alleged that Defendants caused their injuries in order to survive a motion to dismiss.

Defendants contend that Plaintiffs have not alleged that they were actually exposed to the toxins allegedly omitted by Defendants.  (See No. 1:20-cv-08487-NLH-AMD, ECF 133-1 at 5). Defendants also contend that Plaintiffs have not sufficiently identified which toxins caused which injuries in order to show a nexus between the chemicals and the medical conditions.  (See No. 1:20-cv-08487-NLH-AMD, ECF 137-1 at 8-9).  Further, they contend that the allegations are so vague that they fail to meet the pleading requirements of Rule 8(a) and that Plaintiffs have not plead the existence of signature injuries such that the Court could infer based on circumstantial evidence that the

standard has been met.  (Id. at 12).

The Court does not see the purported pleading deficiencies the same way that Defendants do.  Integral to the analysis is whether Plaintiffs have adequately alleged that Defendants proximately caused their injuries.  "Ordinarily, issues of proximate cause are considered to be jury questions," but a court may decide the issue as a matter of law where "no reasonable jury could find that the plaintiff's injuries were proximately caused."  Broach-Butts v. Therapeutic Alternatives, Inc., 191 A.3d 702, 711 (N.J. Super. App. Div. 2018) (citing Perez v. Wyeth Labs. Inc., 161 N.J. 1, 27, 734 A.2d 1245 (1999); Vega by Muniz v. Piedilato, 154 N.J. 496, 509, 713 A.2d 442 (1998)) (other citations omitted).

Proximate cause is "a cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred."  Id. (citations omitted).  It is not enough that the injury would not have occurred but for the defendant's negligence, where there are other contributing causes of the injury.  Id.  A plaintiff must show that the negligence was a "substantial factor" contributing to the result.  Id. (citing Komlodi v. Picciano, 217 N.J. 387, 422, 89 A.3d 1234 (2014) ("[T]he 'substantial factor' test is given when there are concurrent causes potentially capable of producing the

harm or injury.")).  "A substantial factor is one that is not a remote, trivial or inconsequential cause."  Id. (citations omitted).  Ultimately, the "actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."  Id. (citing Restatement (Second) of Torts § 435(2)) (other citations omitted).

With respect to whether Plaintiffs adequately alleged that they were actually exposed to the toxins, the Plaintiffs state that "[a]s a consequence of Defendants' intentional, knowing, reckless, grossly negligent, and negligent acts and omissions described herein, resulting in the contamination of the water, air, and soil, including but not limited to Plaintiffs' water supply[.]" (See, e.g., Bond 1 Complaint at 5).  There is no other logical way to read this part of the complaints except to be said to allege that those were the ways that Plaintiffs were exposed to the toxins.  And while this allegation is certainly broad, it is not the only statement that Plaintiffs proffer to establish actual exposure.  They attach the notice by the NJDEP, which this Court may properly consider as incorporated into Plaintiffs' allegations in analyzing the motions to dismiss

given that it was attached to the complaints.[5]  Pension Ben.
Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196
(3d Cir. 1993) ("To decide a motion to dismiss, courts generally
consider only the allegations contained in the complaint,
exhibits attached to the complaint and matters of public
record.")  The Court notes that the report indicates addresses
where the NJDEP found contamination by toxins emitted by
Defendants and these addresses are within just a few miles of
the addresses at which Plaintiffs claim that they were exposed
to the toxins that caused their medical conditions.  (See Bond 1
Complaint, ECF 36-1 at 11).

For instance, for the Bond 1 Plaintiffs, one of the
contaminated sites[6] was identified approximately 14 miles from
the Solvay plant and 6 miles from the DuPont plant.  The
residence at which the Bond 1 Plaintiffs claim they were exposed
to toxins is approximately 12 miles from the Solvay plant and 8
miles from the DuPont plant.  In addition, the Bond 1
Plaintiffs' residence located generally in between the Solvay
plant and the contaminated address.  While the Bond 1

---

[5] As stated above, the Court takes notice of the NJDEP notice for
the Slusser complaint, which failed to attach it.

[6] For this illustrative exercise, the Court considers 157
Straughns Mill Road in Swedesboro, Gloucester County.  (Id.)
For this exercise, the Court takes judicial notice of the
distances between the locations at issue here.

Plaintiffs' residence was further from the DuPont plan than the contaminated address, it is right in between the Solvay and DuPont plants and closer to water sources.  This is consistent with the Bond 1 Plaintiffs' allegations that one mode of contamination was through the water.  Piecing the distances and the topography together, it is plausible that the toxins reached Plaintiffs as they have alleged.  Plaintiff's allegations, the NJDEP notice, and the reasonable inferences to be drawn from those alleged facts if proven true, make out a plausible claim of causation sufficient to defeat a motion to dismiss.

Defendants' citation to Lafferty v. Sherwin-Williams Co., 2018 WL 3993448, at *5 (D.N.J. Aug. 21, 2018) does not change the Court's view here.  In Lafferty, the plaintiffs sought medical monitoring as a result of exposure to a toxic substance. Id.  Defendants lean heavily on the court's statement there that the plaintiffs did not state a claim because "they do not identify specific substances to which Plaintiffs were actually exposed, at what levels Plaintiffs were *actually* exposed[.]" Id. (emphasis in the original).  The court in Lafferty, however, found that information to be key because the plaintiffs sought medical monitoring for latent conditions which had not yet shown up and were simply making sweeping statements on a classwide basis.  Id.  Indeed, the issue with the complaint in that case was that it only made sweeping statements of latent disease and

18

that in medical monitoring cases allegations of a "distinctive increased risk of future injury is needed.  Id. at 4. ("Sweeping allegations of 'serious latent disease' do not, however, properly put a defendant on notice of what the claim is or the grounds on which it rests.")

First, the Court does not find the pleading in the complaints here to be as sparse as described in Lafferty.  Each complaint enumerates the conditions from which Plaintiffs suffer, the types of toxins at issue, and the medical results that are associated with exposure to those toxins.  The factor most key in the Court's distinction here is the incorporation of the NJDEP report.  Discovery may reveal more about exactly how the toxins did or did not contribute to Plaintiffs' conditions, but at this stage, the pleading is sufficient. See Broadus v. Prison Health Servs., Inc., 2016 WL 4558331, at *3 (W.D. Pa. Sept. 1, 2016) ("[A] claim should not be dismissed under Rule 12(b)(6) at the pleading stage if the complaint sets forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements.") Second, as noted, Plaintiffs statements that they were exposed to the toxins, and thereafter became ill, coupled with their reliance on the NJDEP's findings of contamination so close to their residences are adequate allegations of causation. Further, the Court agrees with Plaintiffs that Defendants might

19

well have more information in their possession regarding how far
their toxins spread and by what mechanism, information, by
virtue of the lapse of time and lack of resources, each
individual Plaintiff would not be privy to.  The Court need not
conclude that Plaintiffs allegations of causation make out a
*prima facie* case but rather whether there is a reasonable
expectation that discovery might lead to evidence of that
element.  Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d
Cir. 2016) ("A *prima facie* case is "an evidentiary standard, not
a pleading requirement, and hence is not a proper measure of
whether a complaint fails to state a claim.") (internal
citations and quotation marks omitted).  Given the fact that
proving causation in toxic tort cases can often be less
straightforward than in regular tort cases, the Court holds that
causation has been sufficiently pled here.

The Court also holds that the notice pleading requirement
under Rule 8(a) has been satisfied.  Rule 8(a)(2) requires that
a complaint contain "a short and plain statement of the claim
showing that the pleader is entitled to relief."  A complaint
must plead facts sufficient at least to "suggest" a basis for
liability.  Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir.
2004).  The statement of facts "need only 'give the defendant
fair notice of what the ... claim is and the grounds upon which
it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007)

20

(citations omitted).  "Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case — some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008)(internal quotation marks omitted.  In this context, where the NJDEP had already released a report on the Defendants' release of toxins and where the complaints state the location, time frame, and medical conditions from which they suffer, the Court holds that the pleadings are sufficient to put the Defendants on notice of the claims and the basic facts underlying them in satisfaction of Rule 8.

**b.  <u>The Pleading of Exposure to Toxins Other than PFNA and PFOA.</u>**

Defendants Solvay and Arkema also argue that to the extent that the Court allows the complaints to go forward, that the claims should only be allowed to proceed as to PFNAs and PFOAs because Plaintiffs have not alleged a nexus between them and any other toxin.  Defendant 3M makes a similar argument that it should only be liable to chemicals that it sold to the other Defendants.  The Court agrees with the proposition that Defendants can only be held liable for exposure to the toxins

which can actually be traced back to them.  A fair reading of
the complaints shows that Plaintiffs only allege the release of
PFNAs and PFOAs from the Defendants' plants.  The same appears
to be true of the allegations against 3M.  Where Plaintiffs
refer to Defendants and their emissions of "toxins", for the
most part, it appears to just be shorthand for those two
chemical compounds.  Severa v. Solvay Specialty Polymers USA,
LLC, 524 F. Supp. 3d 381, 393 (D.N.J. 2021) ("When Plaintiffs
collectively refer to 'Defendants' regarding their discharge of
PFAS and knowledge of the nature of PFAS, that is simply for
pleading efficiency rather than pleading deficiency, as it would
be very repetitive and cumbersome to repeat most of the
allegations twice.") However, there are instances, where it
appears that Plaintiffs are trying to indicate chemicals besides
PFNAs and PFOAs.  (See ECF 36 at 13 ("Upon information and
belief, in addition to the PFOA/PFAS chemicals, many, if not
most of the other toxins discussed above were also wrongfully
produced, used and discharged into the environment from this
facility."))  To the extent that Plaintiffs are trying to plead
liability for some other toxins besides PFNAs and PFOAs, the
Court holds that Plaintiffs have not plead the nature of other
toxins with enough specificity to state a plausible claim.
Malleus, 641 F.3d at 563.

c. **The Court's holdings in Giordano and Severa do not Compel a Different Result**

Defendants also rely on this Court's decisions in Giordano v. Solvay Specialty Polymers USA, LLC, 522 F. Supp. 3d 26, 33 (D.N.J. 2021) and Severa v. Solvay Specialty Polymers USA, LLC, 524 F. Supp. 3d 381, 393 (D.N.J. 2021) for the proposition that Plaintiffs have not sufficiently alleged which Defendant produced which chemical and which chemicals came into contact with Plaintiffs.  Specifically, they focus on the statement in Giordano that "[t]he complaint directly ties Defendants' release of specific PFAS to the PFAS found in their water." Giordano, 522 F. Supp. 3d at 34.  It is true that the plaintiffs in Giordano all had their private wells tested for toxins whereas Plaintiffs in this case did not.  But part of the issue in that case was diminution in property value and key to that claim was a showing that their properties were harmed.  See id.

Plaintiffs here are not making a claim about a specific property's value due to current contamination for which allegations about the current level of toxins in the properties would be a key allegation.  Rather, they are making claims about exposures to toxins sometimes decades ago that have affected their health long term.  The Count does not deny that the more detail in a complaint such as the methods, amounts, and times of exposure would be beneficial.  However, the standard is not

perfect pleading, just pleading that gives "a reasonable
expectation that discovery will reveal evidence of the necessary
elements."  See Broadus, 2016 WL 4558331 at *3.  Reading the
complaint as a whole and accepting the well-pleaded allegations
as true and viewing them in the light most favorable to
Plaintiffs, the Court holds that the complaints may proceed.
Evancho, 423 F.3d at 351.


    d. **The Standalone Claims for Punitive Damages Must be
       Dismissed.**

    Finally, with regard to Plaintiffs' standalone count for
punitive damages, the Court agrees that an independent count for
punitive damages is not cognizable. Smith v. Covidien LP, 2019
WL 7374793, at *10 (D.N.J. 2019) (citing DiAntonio v. Vanguard
Funding, LLC, 111 F. Supp. 3d 579, 585 (D.N.J. 2015) (citing
Hassoun v. Cimmino, 126 F. Supp. 2d 353, 372 (D.N.J. 2000))
("Punitive damages are a remedy incidental to [a] cause of
action, not a substantive cause of action in and of
themselves.").

    Plaintiffs are not prevented from seeking punitive damages
relative to their other claims, however, if punitive damages are
available for such claims. See Smith, 2019 WL 7374793 at *10
(citing Zodda v. National Union Fire Ins. Co. of Pittsburgh,
Pa., 2014 WL 1577694, at *5 (D.N.J. 2014) ("It is well settled

that the general rule is that there is no[ ] cause of action for 'punitive damages.' This count will be dismissed from the complaint, but the Court notes that Plaintiff has preserved its right to argue for punitive damages as a remedy if allowed under the remaining causes of action.")  Plaintiffs concede that the counts for punitive damages must be dismissed.  The Court will therefore dismiss those counts.  However, Plaintiffs' request for punitive damages will be preserved as a request for relief rather than a count.  See Giordano, 522 F. Supp. at 39.

## CONCLUSION

For the reasons expressed above, Defendants' motions to dismiss the complaints will be granted in part and denied in part.

An appropriate Order will be entered.


Date: February 1, 2022                  /s Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.