# SZAFERMAN LAKIND

Szaferman, Lakind, Blumstein & Blader, P.C.
Attorneys at Law

101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
p: 609.275.0400
f: 609.275.4511
www.szaferman.com

Arnold Selikin
Barry D. Szaferman
Jeffrey P. Blumstein#
Steven Blader#
Brian G. Paul+
Craig J. Hubert++
Michael R. Paglione*
Lionel J. Frank**
Jeffrey K. Epstein+
Stuart A. Tucker
Scott P. Borsack***
Daniel S. Sweetser*
Robert E. Lytle
Janine G. Bauer***

Samuel M. Gaylord*+++
Tanya L. Phillips*
Robert P. Panzer
Benjamin T. Branche*
Michael D. Brottman**
Janine Danks Fox*
Thomas J. Manzo**
Brian A. Heyesey
Lindsey Moskowitz Medvin**
Marc A. Brotman**
Janis A. Eisl*
Matthew J. Solin*
Max H. Steinberg

Robert E. Lytle
Stephen L. Skillman
Linda R. Feinberg
Anthony J. Parrillo
Jeffrey M. Hall
Bryce S. Chase++++
Kim A. Otis

Counsel
Bhuchar Law Firm
www.bhucharlaw.com
P: 609.514.5195

Huff, Moran & Orron, LLC
1246 South River Road
Cranbury, NJ 08512
P: 609.655.3600

#Retired

*NJ & PA Bars
**NJ & NY Bars
***NJ, NY & PA Bars

+Certified Matrimonial Attorney
++Certified Civil and Criminal Trial Attorney
+++Certified Workers Comp Attorney
++++Certified Workers Comp & Civil Trial Attorney

February 21, 2022
*VIA ECF*

The Honorable Ann Marie Donio, USMJ
United States District Court for the District of New Jersey
Mitchell H. Cohen Building & US Courthouse
Fourth and Cooper Streets
Camden, NJ 08101

RE: *Kimberly Bond, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.*
   Civil Action No.: 1:20-cv-08487-NLH-AMD
   *Theresa Slusser, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.*
   Civil Action No.: 1:20-cv-11393-NLH-AMD
   *Tammy O'Leary, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.*
   Civil Action No.: 1:21-cv-00217-NLH-AMD
   *Carly Corrar, et. al. v. Solvay Specialty Polymers, USA, LLC, et. al.*
   Civil Action No.: 1:21-cv-00452-NLH-AMD
   *Shirley Bond v. Solvay Specialty Polymers, USA, LLC, et. al.*
   Civil Action No.: 1:21-cv-11203-NLH-AMD

Dear Magistrate Judge Donio:

This letter is being submitted in the above Group 2 matters jointly by Plaintiffs and by Defendants, E. I. du Pont de Nemours and Company ("DuPont"), The Chemours Company, The Chemours Company FC, LLC (together, "Chemours"), Solvay Specialty Polymers USA, LLC ("Solvay"), Arkema Inc. ("Arkema"), and 3M Company ("3M") (collectively, "Defendants") pursuant to Your Honor's Scheduling Order, entered on January 20, 2022 (Doc. No. 179), to update the Court on the status of discovery in the Group 2 Cases in advance of the Court's February 22, 2022 case management conference. A number of issues have been resolved but several remain in dispute, among them are the following:

1. **Plaintiffs' Request for Information to Amend Their Complaint:**

**Plaintiffs' Position.** As Your Honor is aware, Judge Hillman, on February 2, 2022 (Doc. No. 184), entered an order denying in part and granting in part the Defendants' motion to dismiss. As

5836595.1



*The Honorable Ann Marie Donio, USMJ*
*February 21, 2022*

a result of that opinion, Plaintiffs desire to amend their complaint to more specifically identify the chemicals which Defendants' discharged that caused Plaintiffs' injuries. In order to do so expeditiously, Plaintiffs have asked Defendants to provide, at the outset of discovery, several items of information. As Judge Hillman observed in resolving the motion to dismiss, much of this information would be more readily available to Defendants than to Plaintiffs.

Plaintiffs seek a listing of chemicals present at each facility during the last 30 years. Defendants are required to file Community Right to Know reports with local government agencies by the Emergency Planning and Community Right to Know Act, 42 U.S.C. 11021,[1] which will have this information. While Plaintiffs intend to request the Community Right to Know surveys using OPRA, it would expedite the preparation of an amended complaint were Defendants to provide each annual report at this time. In addition, the Emergency Planning and Community Right to Know Act requires each Defendant to file Material Safety Data Sheets with several

---

[1] **(a) Basic requirement.**
**(1)** Submission of MSDS or list. The owner or operator of any facility which is required to prepare or have available a material safety data sheet for a hazardous chemical under the Occupational Safety and Health Act of 1970 and regulations promulgated under that Act (15 U.S.C. 651 et seq.) shall submit a material safety data sheet for each such chemical, or a list of such chemicals as described in paragraph (2), to each of the following:

    **(A)** The appropriate local emergency planning committee.
    **(B)** The State emergency response commission.
    **(C)** The fire department with jurisdiction over the facility.

**(2)** Contents of list.

    **(A)** The list of chemicals referred to in paragraph (1) shall include each of the following:

        **(i)** A list of the hazardous chemicals for which a material safety data sheet is required under the Occupational Safety and Health Act of 1970 . . . .
        **(iii)** Any hazardous component of each such chemical as provided on the material safety data sheet. * * *

**(c) Availability of MSDS on request.** * * *
**(2)** To public. A local emergency planning committee, upon request by any person, shall make available a material safety data sheet to the person in accordance with section 324 [42 USCS § 11044]. If the local emergency planning committee does not have the requested material safety data sheet, the committee shall request the sheet from the facility owner or operator and then make the sheet available to the person in accordance with section 324

2

government entities for many of the chemicals used at its facility. Plaintiffs seek that information as well. Since all of this information exists, and has been in existence since 1987 (the first year reports were required), it should not be cumbersome for Defendants to provide this information in order to obviate a time consuming OPRA request.

Based upon online data, Plaintiffs are in the process of developing information on the chemicals produced at the DuPont and Solvay facilities. However, that information is incomplete and will remain incomplete until receipt of the Right to Know surveys from the public repositories. Plaintiffs are simply asking that Defendants provide publicly available information now in order to expedite the amendment to their complaint.

Plaintiffs do not propose a fishing expedition, as Defendants suggest, but rather targeted disclosure of readily available materials. Further, Defendants are wrong in their claim that information about non-PFAS chemicals is irrelevant as a consequence of Judge Hillman's ruling. To the contrary, the potential causes of Plaintiffs' injuries are, relevant. Someone, either Plaintiffs, if the Complaint is ultimately amended, or Defendants, if it is not, will be motivated to claim that other toxins, such as arsenic, lead, mercury, PAH's or solvents, are a cause or the cause of injuries. Therefore, whether the Complaint is amended or not, information about other toxins is relevant to all parties.

Insofar as 3M's situation is admittedly different from that of the other Defendants, Plaintiffs would welcome a bilateral meet and confer with that Defendant regarding the proper scope of disclosure on this issue from it.

**Defendants' Position**. On February 2, 2022, Judge Hillman dismissed Plaintiffs' claims against Defendants to the extent those claims were related to any chemicals other than PFNA or PFOA. In relevant part, Judge Hillman explained that "[a] fair reading of the complaints shows that Plaintiffs only allege the release of PFNAs and PFOAs from Defendants' plants" and held that "[t]o the extent that Plaintiffs are trying to plead liability for some other toxins besides PFNAs and PFOAs . . . Plaintiffs have not plead the nature of other toxins with enough specificity to state a plausible claim." (*See e.g., K. Bond* Dkt. 184 at 21-22.). As a result, there are no currently-pending claims against Defendants related to any chemicals other than PFNA and PFOA. Discovery should proceed accordingly. Yet, Plaintiffs now assert that Judge Hillman's holding was actually an invitation for Plaintiffs to demand from Defendants additional, expedited discovery on non-PFNA and non-PFOA chemicals over a 30-year timeframe. But Judge Hillman dismissed the claims that would arguably make such discovery relevant under Fed. R. Civ. P. 26. Thus, Plaintiffs have no basis to seek such discovery from Defendants.

Recognizing that they have no basis to argue that discovery of non-PFNA or non-PFOA chemicals is proper, Plaintiffs resort to burden shifting, arguing that "in order to obviate a time consuming OPRA request," Defendants should produce the requested information as part of an

**SZAFERMAN LAKIND**

The Honorable Ann Marie Donio, USMJ
February 21, 2022

expedited discovery process in this litigation. This argument flips Rule 26 on its head. Rule 26 provides that "parties may obtain discovery . . . that is relevant to any party's claim," Fed. R. Civ. P. 26(b)(1), not that parties may obtain discovery that is relevant to claims a party has failed to plausibly plead. If Plaintiffs want to engage in a fishing expedition as to non-PFNA or non-PFOA chemicals in an attempt to create a Rule 11 basis to amend their complaints, they can do so on their own time, and at their own expense.[2] Plaintiffs attempt to downplay the burden of their request, ignoring the reality of what is required to collect even subsets of documents over a 30-year period during which time document storage processes have changed significantly. Nor do they explain why Defendants should not have to expend their own resources to do Plaintiffs' work for them by searching for, collecting, reviewing, and producing decades of documents that are relevant only to the claims the Court has dismissed. *See e.g., Acosta v. Pace Local 1–300 Health Fund*, Civ. No. 04–3885, 2007 WL 496877 (D.N.J. Feb. 8, 2007) ("a party whose claim is supported by nothing more than bald assertions and legal conclusions cannot survive a motion to dismiss merely by expressing a belief that additional discovery will confirm whether or not a particular claim actually exists.").

3M is named in these cases as an alleged manufacturer and seller of PFOA and NaPFO and not as a site owner or operator. Prior to the Court's decision dismissing claims concerning supposed "other toxins," 3M served Plaintiffs with an interrogatory that sought disclosure of any "information or evidentiary support" for their contention that 3M manufactured and sold any "non-PFAS" for use at the Chambers Works or West Deptford facilities. Plaintiffs' interrogatory response of January 31, 2022 referred to 25 pages of sales records that 3M produced to Plaintiffs as part of "core discovery," as the lone purported support for their contentions. But, as 3M explained in a February 7, 2022 letter to Plaintiffs, none of those is a sales record of a so-called "other toxin." Rather, each of those records reflect sales of PFAS products or product-related accessories from associated business lines to DuPont at the Chambers Works facility (none concerns a 3M sale to the West Deptford facility). Accordingly, nothing in Plaintiffs' interrogatory response—and we are aware of no other evidence that Plaintiffs have identified— could support a good faith allegation by Plaintiffs that 3M sold, in the Court's words, "some other toxins besides PFNAs and PFOAs" (*K. Bond* Dkt. 184 at 22) for use at either of the two facilities that are at issue in the complaints. 3M is always willing to confer on discovery issues, but, for the foregoing reasons, among others, does not accede to the notion that discovery of 3M concerning non-PFAS chemistries or products is appropriate at this juncture.

---

[2]   Plaintiffs acknowledge that information they seek is available to them through public records requests. In fact, since Plaintiffs' position is that "OPRA requests can be submitted independently of litigation," they could have obtained this information prior to filing their original complaints.

4

**SZAFERMAN LAKIND**

*The Honorable Ann Marie Donio, USMJ*
*February 21, 2022*

2. **Removal:**

**Plaintiffs' Position.** DuPont has removed several cases to this Court on Federal Officer removal grounds claiming that it manufactured certain products at the direction of the United States Government as well as on fraudulent joinder grounds. The removal creates several complications.

First, since a party can always challenge subject matter jurisdiction, 28 U.S.C. 1447(c), Plaintiffs can file a motion to remand on that ground at any time. However, a motion to remand on fraudulent joinder must be filed within thirty days. Plaintiffs believe that it would be more efficient for the Court and all parties to file a single motion addressed to both grounds. This in turn would require an extension of time to move to remand on fraudulent joinder grounds.

Second, Judge Hillman has dismissed Plaintiffs' claims based upon toxic substances other than PFAS. In its removal petition, DuPont has maintained that it manufactured those other substances at the direction of the Federal government and thus had acquired Federal Officer status. However, given the dismissal of the claims relating to these other substances, the factual premise for the removal is wanting. As discussed above, Plaintiffs are exploring whether to amend their complaints which will depend, in part, upon the content of the Right to Know surveys that they seek. While the factual premise which justified the removal is no longer extant, it does not seem efficient to require Plaintiffs to move to remand at this time if they will subsequently amend as that amendment may impact Federal jurisdiction.

Third, Judge Hillman, in remanding *N.J. Dep't of Envtl. Prot v. E.I Du Pont de Nemours*, 202 U.S.Dist. LEXIS 91051 (D.N.J., dec. May 22, 2020), commented that plaintiff in that case made only a facial challenge to removal. Since it filed its petition for removal, DuPont has, at Plaintiffs' request, provided Plaintiffs with the contracts and other information upon which DuPont relied as a basis to claim Federal officer status. Plaintiffs are evaluating that information as it is anticipated that their challenge will not be a facial challenge, but instead evidence based. However, until Plaintiffs receive Defendants' Community Right to Know surveys, Plaintiffs cannot make a final determination as to whether the removal on Federal Officer grounds was warranted.

It is in all parties' interest that jurisdictional issues be resolved. Accordingly, Plaintiffs would like to establish a schedule to obtain the Right to Know disclosures to determine if the chemicals which DuPont claims to have been manufactured to government requirements were, in fact, on site after World War II. Accordingly, we have proposed and Defendants have agreed to extend for 30 days Plaintiffs' time to move for remand on grounds other than subject matter jurisdiction so that a thoughtful and sensible overall approach to this complex problem can be fashioned.

The Honorable Ann Marie Donio, USMJ
February 21, 2022

We would further add, that Defendants' reference to the *Abels* case below, is of little moment, if for no other reason that additional cases will likely be filed in the Superior Court, where the pleadings can readily be modified to address the jurisdictional claims which Defendants advance.

Plaintiffs have no objection to extending Defendants' time to answer to April 11, 2022.

**Defendants' Position**. The removal of these cases is proper on two independent grounds, as this Court has both federal officer and diversity jurisdiction over the matters. Plaintiffs seem to be taking the position that they are entitled to first receive expedited discovery in the Group 2 matters (on issues not within the scope of those cases, as discussed above), in order to decide whether to move to remand these cases. It is well established that the defendant's right to remove is to be determined according to the plaintiffs' pleading at the time of the petition for removal. *See, e.g., Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). Defendants see no basis why these cases should be treated any differently.

Plaintiffs claim that they could easily amend the complaints to eliminate the basis for this Court's subject matter jurisdiction over these removed cases (a contention that Defendants dispute), but in the same breath argue that they need significant discovery from Defendants in order to launch an evidence-based remand challenge. Plaintiffs have no basis, however, to seek this discovery in their other cases because it relates to dismissed claims (as described above). Thus it would appear that Plaintiffs are using the prospect of a remand motion to manufacture an artificial basis for seeking such discovery.

Regardless, Defendants appreciate the timing challenges Plaintiffs have expressed in deciding whether to seek leave to amend these complaints, while also determining whether to move to remand, and pursuant to the Parties' conferral on this issue, Defendants are agreeable to Plaintiffs' proposal of a 30-day extension on Plaintiffs' deadline to move to remand under 28 USC 1447(c) from February 25th to March 27, 2022. Defendants' position is that they should not, however, be required to respond to the four removed cases until 14 days thereafter, April 11, 2022.

3. **Open Public Records Act Request:**

**Plaintiffs' Position**. During the third quarter of last year, Plaintiffs sent a list of search terms to Defendants which they proposed to use as part of an Open Public Records Act (OPRA) request to the Department of Environmental Protection. Plaintiffs invited Defendants to supplement that request. Last week, Plaintiffs received Defendants' responses which did not supplement Plaintiffs' requests, but sought to limit them. Since OPRA requests can be submitted independently of litigation, Plaintiffs are prepared to combine their request with Defendants or to submit an OPRA request without input from Defendants. Plaintiffs see no reason to limit their request as

**SZAFERMAN LAKIND**

*The Honorable Ann Marie Donio, USMJ*
*February 21, 2022*

Defendants' desire, and propose that the parties discuss a combined request but failing an agreement within the next seven days, they parties proceed independently.

**Defendants' Position.** Defendants did provide a detailed supplement to the joint OPRA request drafted by Plaintiffs that included document requests related to each plaintiff and their addresses, among other things. Defendants also proposed revisions to the existing draft of Plaintiffs' joint OPRA, some merely stylistic, and others clarifying the exact PFAS that are at issue in these cases (per Judge Hillman's opinion these cases are limited to PFOA and PFNA). The joint OPRA request as drafted by Plaintiffs had already been limited to PFAS, and so Defendants simply wanted to make it clear which specific PFAS were of concern rather than burden the NJDEP with searches involving an extremely broad class of chemicals (there are thousands of known PFAS). Plaintiffs have not sent Defendants a counter proposal, but they appear to be willing to further meet and confer on a combined request.

4. **The Number of Interrogatories:**

**Plaintiffs' Position.** Plaintiffs believe that, at the January 18, 2022 conference, the Court determined that prospectively Plaintiffs collectively and Defendants collectively can each serve 50 interrogatories in the aggregate in all Group 2 cases. However, insofar as interrogatories had already been served in some cases, they were to be answered. Therefore, each side would have to answer a total of 50 common Interrogatories going forward. We understood Defendants to be of the view that Plaintiff alone would be limited to 50 Interrogatories in the aggregate, but that Your Honor would permit each Defendant to serve 50 Interrogatories for a total, we believe, of 200 Interrogatories. As Plaintiffs argued before Your Honor, there is a significant overlap among the areas of inquiry for each Defendant and that both sides should be subject to the same limitations. Further, as related, we understood Your Honor to have stated that 50 per side was the Court's preferred approach. Of course, we would also propose that either by consent, or for good cause shown, additional interrogatories might be permitted.

**Defendants' Position.** At the Court's direction, the parties have each answered the interrogatories served in the *Kimberly Bond et al* (1:20-cv-08487), *Theresa Slusser et al* (1:20-cv-11393), *Tammy O'Leary et al* (1:20-cv-00217), *Carly Corrar et al* (1:20-cv-00452) and *Shirley Bond et al* (1:20-cv-11203) cases. Each party shall only answer a total of 50 interrogatories in the aggregate in those cases. Thus, any additional interrogatories that may be served on a party in those cases are limited to 50 less the number previously served, if the limit has not already been exhausted. The responses to interrogatories in those cases are only available for use in those cases.

For all other current or future Group 2 cases, Plaintiffs and Defendants can each serve 50 interrogatories in the aggregate. Thus, each party would have to answer a maximum of 50 interrogatories across those cases. Plaintiffs are not required to serve the same 50 interrogatories on each Defendant, but each Defendant is only required to answer 50 interrogatories in the

aggregate across those cases. Defendants are not required to serve the same 50 interrogatories on each Group 2 Plaintiff, for among other reasons because there may be differences among the Group 2 Plaintiffs (e.g., nature of the alleged injury). However, each Group 2 Plaintiff is only required to answer 50 interrogatories in the aggregate. The responses to interrogatories in those cases shall only be available for use in those cases.

The limits on interrogatories shall not apply to contention interrogatories, which are governed by Local Rule. An interrogatory shall not be required to elicit information that will be disclosed in accordance with Fed. R. Civ. P. 26(a)(2).

### 5. Medical Records:

**Plaintiffs' Position.** Plaintiffs have retained RecordTrac, a commercial record retrieval service that gathers medical records. Plaintiffs believe that it is more efficient and less burdensome on medical providers for the parties to agree upon a common retrieval service. Plaintiffs have suggested that the costs of that service be split per capita. Defendants have taken no position on this proposal. Plaintiffs recognize that Defendants may seek medical records that Plaintiffs do not believe to be discoverable. Plaintiffs have invited Defendants to provide a list of categories of the records they seek so the parties can meet and confer on the scope of medical record discovery. Defendants have not as yet done so.

**Defendants' Position.** Defendants have retained Marker Group as their preferred medical records vendor. Defendants are to send a proposal for cost-sharing to Plaintiffs. Defendants have invited Plaintiffs to identify a list of categories for the medical records they believe are not discoverable. Defendants reserve all of their rights with regard to this issue, and are prepared to confer further with Plaintiffs.

### 6. Status of Discovery:

On January 31, 2022 both Plaintiffs and Defendants provided their written discovery responses to the other side's previously-issued requests (interrogatories and requests for production). The parties are currently reviewing the discovery responses and have begun to exchange letters and to confer on the responses. The parties expect this conferral process to continue over the coming weeks.

### 7. Document Discovery:

**Plaintiffs' Position.** Plaintiffs hope the Court will set a schedule for the service of documents in response to Plaintiffs' Request for Production of Documents.



*The Honorable Ann Marie Donio, USMJ*
*February 21, 2022*

**Defendants' Position**. Plaintiffs' request for a schedule for the production of documents is premature. The parties exchanged objections and responses to requests for production on January 31, 2022. Before a schedule can be set, the parties should, as has been done in the Group 1 cases, engage in meet and confers regarding the objections asserted, and the scope of production including any ESI custodians and search terms that may be appropriate. As noted above, the parties expect the conferral process to continue over the coming weeks. Once this process is complete and the scope of discovery is set, Defendants can propose a schedule for document production.

Defendants will, however, start making additional, rolling document productions by March 4, 2022 provided Plaintiffs are willing to do the same.

**8.     Electronically Stored Information Protocol:** The parties have resolved all issues with regard to this protocol.

**9.     Confidentiality Order:** The parties have agreed upon a single order to use in all cases.

**10.    Rule 26 Initial Disclosures in Newly Filed and Removed Litigations:** The parties propose exchanging Rule 26 Initial Disclosures in the newly-filed *Nicole Bond*, *Albritton*, *Allen*, *Mesogianes*, and *Philipp* litigations by Friday, March 4, 2022. The parties would like to discuss with the Court a case management schedule for these new cases, including whether the Court will require the parties to file joint discovery plans for these cases.

Thank you.

Respectfully submitted,

**SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.**

*s/Arnold C. Lakind*
Arnold C. Lakind

ACL/s

c:     All counsel