**SZAFERMAN LAKIND**

Szaferman, Lakind, Blumstein & Blader, P.C.
Attorneys at Law

101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
p: 609.275.0400
f: 609.275.4511
www.szaferman.com

Arnold C. Lakind
Barry D. Szaferman
Jeffrey P. Blumstein#
Steven Blader#
Brian G. Paul+
Craig J. Hubert++
Michael R. Paglione*
Lionel J. Frank**
Jeffrey K. Epstein+
Stuart A. Tucker
Scott P. Borsack***
Daniel S. Sweetser*
Robert E. Lytle
Janine G. Bauer***

Samuel M. Gaylord*+++
Tanya L. Phillips*
Robert P. Panzer
Benjamin T. Branche*
Michael D. Brottman**
Janine Danks Fox*
Thomas J. Manzo**
Brian A. Heyesey
Lindsey Moskowitz Medvin**
Marc A. Brotman**
Janis A. Eisl*
Matthew J. Solin*
Max H. Steinberg

Of Counsel
Stephen L. Skillman
Linda R. Feinberg
Anthony J. Parrillo
Jeffrey M. Hall
Bryce S. Chase++++
Kim A. Otis

Counsel
Bhuchar Law Firm
www.bhucharlaw.com
P: 609.514.5195

Huff, Moran & Orron, LLC
1246 South River Road
Cranbury, NJ 08512
P: 609.655.3600

#Retired
*NJ & PA Bars
**NJ & NY Bars
***NJ, NY & PA Bars

+Certified Matrimonial Attorney
++Certified Civil and Criminal Trial Attorney
+++Certified Workers Comp Attorney
++++Certified Workers Comp & Civil Trial Attorney

April 18, 2022
*VIA ECF*

The Honorable Anne Marie Donio, USMJ
United States District Court for the District of New Jersey
Mitchell H. Cohen Building & US Courthouse
Fourth and Cooper Streets
Camden, NJ 08101

Re: Group 2 Cases:

Kimberly Bond, et al. v. Solvay Specialty Polymers, USA, LLC, et al.
Civil Action No. 1:20-cv-8487-NLH-AMD

Theresa Slusser, et al. v. Solvay Specialty Polymers, USA, LLC, et al.
Civil Action No. 1:20-cv-11393-NLH-AMD

Tammy O'Leary, et al. v. Solvay Specialty Polymers, USA, LLC, et al.
Civil Action No. 1:21-cv-00217-NLH-AMD

Carly Corrar, et al. v. Solvay Specialty Polymers, USA, LLC, et al.
Civil Action No. 1:21-cv-00452-NLH-AMD

Shirley Bond v. Solvay Specialty Polymers, USA, LLC, et al.
Civil Action No. 1:21-cv-11203-NLH-AMD

Dear Judge Donio:



*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

### I. Plaintiffs' Position

On March 17, 2022, Your Honor directed the Group 2[1] Plaintiffs to submit a detailed description of the status of the dispute with regard to electronic search terms along with an explanation as to why the Plaintiffs in the Group 2 (personal injury) cases desire different search terms than those to be used in the Groups 1 (property damage), 3 (medical monitoring class), and 4 (damage to municipal water system) cases and in the Department of Environmental Protection ("DEP") Natural Resource Damage cases ("NRD cases"). Plaintiffs believe that the parties have made progress through the meet and confer process, but several issues remain to be resolved. Before turning to those issues, this letter discusses the differences between the personal injury cases, on the one hand, and the Groups 1, 3, 4, and the NRD cases, on the other. Plaintiffs and 3M are in substantial agreement on all issues and do not believe that the Court's intervention will be needed on any issues with 3M.

#### A. Plaintiffs' Position Regarding Differences Between the Group 2 and the Groups 1, 3, 4 and NRD Cases

The Group 2 cases are personal injury cases; the other cases are either medical monitoring or property damage cases. Certain categories of discovery are common to all cases, such as the extent of the contamination. Other categories of discovery, health and causation information, are unique to the Group 2 cases.

As a threshold matter, the elements of proof in the personal injury cases differ from those in the other cases. The NRD and private property damage cases do not implicate issues relating to personal injuries, but the medical monitoring case does. However, to prevail on a medical monitoring case, a plaintiff need only elicit medical testimony that a program of medical monitoring is reasonably necessary to permit the discovery of an injury which is related to some combination of chemical exposures. Proof of symptoms, let alone disease, is not necessary for a plaintiff in a medical monitoring case. *Ayers v Jackson*, 106 N.J. 557, 604 (1987). In the Group 2 personal injury cases, in contrast, Plaintiffs must prove that exposure to Defendants' discharges or emissions proximately caused or aggravated a particular Plaintiff's diagnosed disease(s) or condition(s).

---

[1] There are six other lawsuits involving similar claims and the same counsel pending before this court. *See N. Bond v. Solvay Specialty Polymers USA, LLC* (No. 21-cv-20755-NLH-AMD); *K. Bond v. Solvay Specialty Polymers USA, LLC* (No. 22-cv-01115-NLH-AMD); *Albritton v. A Clemente, Inc.* (No. 22-cv-00397-NLH-AMD); *Allen v. A Clemente, Inc.* (No. 22-cv-00396); *Mesogianes v. A Clemente, Inc.* (No. 22-cv-00394); *Philipp v. A Clemente, Inc.* (No. 22-cv-00395). No discovery has been served in those cases. Four of the cases have pending motions to remand (*Albritton*, *Allen*, *Mesogianes*, and *Philipp*).



Second, proximate cause in the personal injury case has two components: general causation (a chemical exposure is capable of causing a specific disease) and specific causation (one or more specific chemical exposures did proximately cause or aggravate a particular Plaintiff's disease(s) or condition(s)). Specific causation is not relevant to the Groups 1, 3, 4 and the NRD cases. Therefore, only the Group 2 Plaintiffs would be concerned with discovery of information relevant to specific causation, i.e. the health impacts of the alleged exposures.

In addition, the admissibility of evidence on disease causation, both general and specific, is informed by the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993). The parties' efforts to admit expert opinions may be helped by health information in Defendants' possession.

Finally, medical monitoring is an equitable remedy and therefore punitive damages are not available. Punitive damages are available in Plaintiffs' personal injury cases and in the Groups 1 and 4 property damage cases. However, the facts relevant to assessing the recklessness of Defendants' conduct differ between the personal injury and property damage cases. In the former, Plaintiffs must connect Defendants' reckless conduct to an illness. In the latter, plaintiffs need only show that Defendants' reckless conduct caused their property to be contaminated irrespective of whether that conduct was a substantial factor in bringing about any illness. Therefore, in order to advance a punitive damage claim, the Group 2 Plaintiffs must focus on different – illness related - evidence.

For these reasons, Plaintiffs in the personal injury cases require a different and more robust search for evidence related to health impacts, safety and misconduct, than is needed in the Groups 1, 3, 4, and the NRD cases.

## II. Plaintiffs' Objections to Defendants' Searches

### A. 3M

Counsel for Plaintiffs' and 3M have had several productive discussions and are in agreement on all issues save one. The issue which is not yet resolved relates to the time period covered by 3M's custodial searches. In order to resolve this issue, 3M is gathering information which it will provide to Plaintiffs. Based upon the prior history, the parties are confident that the remaining issue can be resolved without Court intervention.

### B. Du Pont

Below, Plaintiffs describe their differences with DuPont.



The Honorable Anne Marie Donio, USMJ
April 18, 2022

        a.       **Connectors in search strings 16 through 43 and 60 to 72:**

**Plaintiff's Position:** These strings link the Plaintiff's diseases to PFOA and PFNA. All parties appear to acknowledge the relevance of documents which discuss the relationship between exposure to Defendants' chemicals and Plaintiffs' diseases. However, Du Pont's search strings propose to connect the chemicals and the diseases with a "w/10" connector (within 10 words). Plaintiffs had proposed search strings connecting ((PFOA OR PFNA) "and" (each disease)). Du Pont has refused to use the "and" connector on the basis that the search would be too broad. 3M and Solvay have agreed to use the "and" connector and DuPont should also do so.

    In order to compare the results of searches using the "and" to the "w/10" connector, Plaintiffs, by way of an experiment, searched a Lexis database of all law review articles and scientific journals. Plaintiffs created the following query: ((PFAS OR polyfluoral) AND (cancer OR birth)). More than 20,000 articles contained the words "cancer" or "birth," and 398 articles contained the words polyfluoral or PFAS. The words ((cancer or birth) "and" (polyfluoral or PFAS)) appeared in 115 articles." If the "and" connector is replaced with the w/10 connector, the total articles returned were 27,. Clearly the choice of the connector adversely impacted the value of the search. Neither connector returned a large amount of articles. In the absence of any evidence sufficient to demonstrate that using the "and" connector, rather than the "w/10" connector will result in overly broad production, Defendants should, Plaintiffs have argued, use the "and" connector.

    By way of compromise, Plaintiffs proposed that Du Pont run the search both ways on a single custodian, Robert Rickard, and report the results to counsel. *See e.g. William A. Gross etc. v. Am Mfrs. Mut Ins. Co.*, 256 F.R.D. 134 (S.D. N.Y. 2009) (commenting on the importance of quality control testing of search terms); N*at'l Day Laborer Org. Network v. United States*, 877 F. Supp. 2d 87, 107 (S.D.N.Y. 2012) ("There is a need for careful thoughtful quality control testing" of searches); *L-3 Cummuns. Corp. v Sparton Corp.*, 313 F.R.D. 661, 667 (M.D. Fla. 2015) (crafting appropriate search terms requires "'careful thought, quality control testing . . . '."). And it is incumbent upon the party resisting the use of a requested search term to "not just assert their objection, but to explain the grounds for the objection and to point to evidence supporting it." *L-3 Cummuns,* at 669. If, in fact, the results reveal that the use of the compound connector, as opposed to the proximity connector, is inefficient, the parties can discuss alternative searches.

    **EID/CC's Position:** By way of brief background, EID/CC plans on searching for 14 ESI custodians and non-custodial sources and search strings that would result in more than 1,000 combinations of individual terms subject to EID/CC's further analysis of each search string and hit tests results. EID/CC has produced more than 388,000 pages of documents to the Group 2 Plaintiffs, including but not limited to: (1) documents as part of core discovery (which consisted

4



*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

of nearly ten thousand pages of environmental reports and correspondence with government agencies on Chambers Works); (2) stored data for certain environmental sampling related to Chambers Works; and (3) documents from Chemours' Corporate Remediation Group SharePoint, also related to Chambers Works.

Despite this, Plaintiffs have asked the Court to require EID/CC to use "AND" connectors, rather than a proximity connector proposed by EID/CC "w/10" for every single one of the broad list of disease terms EID/CC has agreed to run for Plaintiffs – and not just the subset of those disease terms that 3M has agreed to run using an "AND" connector. We understand that 3M has agreed to use an "AND" connector on 29 disease terms. EID/CC continues to test those terms and will continue to negotiate with Plaintiffs in advance of the conference on Thursday, and be prepared to discuss our progress with the Court.

**Plaintiffs' Reply:** EID/CC and Plaintiffs are continuing to confer about the appropriate connector. Provided that EID/CC uses the "and" connector on the same subset of searches for which 3M and Solvay are using that connector, this issue should be amicably resolved before the conference.

### b. Request to add search for birth defect and cancer registries:

**Plaintiff's Position:** Plaintiffs have asked Du Pont to add the following search strings:

> birth w/10 (registry OR database)
>
> cancer w/10 (registry OR database)

Du Pont has refused claiming that this information is not relevant.

Plaintiffs believe that the registries will contain information about the occurrence of birth defects and cancers among Du Pont employees exposed to the chemicals at issue, PFOA and PFNA. That information is relevant to proof of (a) Du Pont's knowledge of the dangers of exposure to these chemicals; (b) its duty to warn; (c) foreseeability: and (d) general and perhaps specific causation.

Du Pont has such registries. See e.g. J. Walrath et al, "A Case-control Study Of Cancer Among Du Pont Employees With Potential For Exposure To Dimethyformamide," https://pubmed.ncbi.nlm.nih.gov/2715850/ (last visited April 16, 2022):



*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

> This case-control study was undertaken to determine whether the risk of developing cancers of the buccal cavity and pharynx . . . . Case and control subjects were obtained from four Du Pont plants. DMF is produced at one plant and used at the other three. **Cancer cases identified from the company Cancer Registry** comprise those reported among active male employees at the study plants during 1956 to 1985.   (Emphasis added).

*See also* "DuPont Workers and a Cancer Cluster," *Environmental Health* (2008, http://www.thepumphandle.org/2008/06/11/dupont-workers-and-a-cancer-cluster/#.Y11F_NrMKUn. *)* (referring to Du Pont cancer registry and exposure to PFAS) (last visited April 18, 2022). The registries exist, the information is relevant, and there is no reason why these registries should not be searched.

**EID/CC's Position:** Plaintiffs have made no explanation as to why either of these searches are relevant or proportional to Plaintiffs' needs in this case, particularly as neither are tied to the chemicals at issue – PFOA and PFNA.  EID/CC has already agreed to run multiple search terms related to cancer and disease, including but not limited to:

- (health* OR toxicity OR disease* OR injur* OR harm* OR safety) w/10 (PFAS* OR PFC* OR perfluor* OR per-fluor* OR polyfluor* OR poly-fluor* OR fluoroalkyl OR PFOA OR APFO OR NaPFO OR PFNA OR C8 OR "C-8" OR "C 8" OR C9 OR "C-9" OR "C 9" OR DFS1 OR "DFS-1" OR "DFS 1" OR DFS2 OR "DFS-2" OR "DFS 2" OR RC8 OR "RC-8" OR "RC 8" OR FC143 OR "FC-143" OR "FC 143" OR FC2000 OR "FC 2000" OR "FC-2000" OR FC118 OR "FC-118" OR "FC 118" OR FC1094 OR "FC-1094" OR FC 1094" OR FC75 OR "FC-75" OR "FC 75" OR ATC603 OR "ATC 603" OR "ATC-603" OR Fluorad)
- (PFNA OR PFOA OR "perfluorononanoic acid" OR "perfluorooctanoic acid" OR NaPFO) w/10 cancer
- (PFNA OR PFOA OR "perfluorononanoic acid" OR "perfluorooctanoic acid" OR NaPFO) w/10 "birth defect"
- (PFNA OR PFOA OR "perfluorononanoic acid" OR "perfluorooctanoic acid" OR NaPFO) w/10 disease
- (PFNA OR PFOA OR "perfluorononanoic acid" OR "perfluorooctanoic acid" OR NaPFO) w/10 injury
- (PFNA OR PFOA OR "perfluorononanoic acid" OR "perfluorooctanoic acid" OR NaPFO) w/10 Barretts
- (PFNA OR PFOA OR "perfluorononanoic acid" OR "perfluorooctanoic acid" OR NaPFO) w/10 Hodgkins



*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

- **Plaintiffs' Reply:** Plaintiffs are unaware of the contents of the EID/CC registry and thus do not know the level of precision used to name different chemicals to which ill employees have been exposed. However, if the registries reveal an enhanced incidence of cancers and other diseases from which Plaintiffs suffer at work sites where the PFAS family of chemicals is used, that would support imposition of a duty to warn and facilitate proof of foreseeability. The alternative searches proposed by EID/CC "(PFNA or PFOA) w/10 of a claimed disease," will not contain information about the frequency of diseases at locations where either PFNA or PFOA is used.

### c.    Request to add Community Right to Know Surveys

Plaintiffs have asked Du Pont to add the following search and synonymous terms "Community Right to Know" (which list the types and quantities of chemicals present at the Chambers Works facility) in order to obtain all such surveys, survey drafts, and documents which discuss Community Right to Know surveys.

Du Pont maintains that it need not provide Community Right to Know Surveys because they are available on the New Jersey DEP DataMiner site. Plaintiffs have searched that site repeatedly and could only locate an electronic summary of some of the information in the Community Right to Know surveys, not the entire certified survey. Therefore, it appears that the complete Community Right to Know Surveys are not available on line. And even if they were, the filed information would not include drafts and other documents referring to the surveys.

The surveys and associated information are relevant for at least three reasons. First, they will show the time periods during which PFOA and PFNA were present at the Chambers Works facility. Second, the surveys will identify every chemical in use at the relevant times. If those other chemicals and the PFOA and PFNA are also present in Plaintiffs' wells (or any of the wells in areas which Judge Hillman found sufficient to plausibly implicate Du Pont as the source of Plaintiffs' exposure), then that combination of chemicals would serve as a fingerprint implicating Du Pont. Third, Plaintiffs have a right to test the veracity of Du Pont's statements, both in discovery and in the filed surveys, as to when it used PFOA and PFNA. The Community Right to Know surveys and associated documents will allow Plaintiffs to do so.

For several reasons, the fact that the final surveys may be obtained by use of an Open Public Records Act request does not excuse Du Pont's failure to provide the surveys and related information. First, it is unclear how Plaintiffs could seek to admit surveys provided by DEP given included hearsay and authenticity concerns. Presumably all parties desire to avoid a time consuming Rule 104 hearing on admissibility which could require the presence of DEP witnesses



The Honorable Anne Marie Donio, USMJ
April 18, 2022

to explain how the summaries were created. Second, even if the full surveys could be acquired using the Open Public Records Act, that is not a substitute for Du Pont directly providing its own documents. This is so because there is no reason to shift the cost of the search for Du Pont's own records to the DEP, which is merely a repository of those records.

Third, the DEP will only have the final surveys, not drafts or emails and other documents referring to those surveys. According to the State of New Jersey, Du Pont has a history of misleading regulators. See e.g. *State of New Jersey v. Du Pont*, ecf, NJD.uscorts.gov/doc1/119114857754, pp. 50 and 59; Complaint attached to Notice of Removal, Doc. 1-1, Case 1:19-cv-14766 (accusing Du Pont of fraudulently withholding information about the presence and dangers of PFAS and concealing "the nature and extent of contamination at its facilities"). Drafts of the Right to Know surveys as well as emails and other documents referring to the surveys would be relevant to (a) testing whether Du Pont has been candid; and (b) ascertaining what chemicals truly are on site, which is relevant both to liability and punitive damages.

Most importantly, with regard to the filed surveys, a defendant cannot resist discovery based upon the fact that information might be publicly available. See cases collected at *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 223-4 (D. D.C. 2015) ("The Federal Rules do not shield publicly available documents from discovery because of their accessibility. A limitation of this nature would lead to patently absurd consequences."); *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 255 F.R.D. 645, 652 (N.D. Iowa. 2009).

**EID/CC's Position:** At the outset, EID/CC disagree with Plaintiffs' characterizations and incorrect statements above. Plaintiffs have again asked the Court to require EID/CC to produce publicly available Community Right to Know submissions (for an unknown period of time), including those without any mention of PFNA or PFOA and without any restriction on date or time period. The parties and the Court have recognized that Judge Hillman's January 2nd Order and Opinion held that Plaintiffs have not plead the nature of toxins other than PFOA and PFNA with enough specificity to state a plausible claim, and that Plaintiffs are not entitled to discovery on chemicals other than PFOA and PFNA. The Court recognized as much at the February 22nd status conference, rejecting Plaintiffs' request on discovery on chemicals other than PFOA and PFNA. (2/22/22 Transcript at 25:1-22; 29:21-30:15). Plaintiffs now make the same request for these documents, but now without even limiting the request to PFNA and PFOA – the chemicals at issue in the Group 2 cases. The Court has also specifically denied this at the February 22 status conference and should do so again. (2/22/22 Transcript at 29:21-30:19).

Plaintiffs have not articulated why it needs these documents other than what is publicly available on the DEP's DataMiner website as it relates to PFOA and PFNA. Plaintiffs have also

8

<80e>
<80e>
<80e>
<80e>
<80e>
<80e>



offered no explanation for why they have failed to obtain these publicly available documents in the two months since the Court denied their last request for them. Nor have Plaintiffs identified any reasonable justification for these materials. To the extent Plaintiffs attempt to claim the surveys are relevant to PFNA or PFOA, EID/CC has agreed to run the following term to address safety data sheets, with Plaintiffs' proposed modification to add "SDS":

- ("Safety Data Sheet" OR "SDS" OR "MSDS") AND (PFAS* OR PFC* OR perfluor* OR per-fluor* OR polyfluor* OR poly-fluor* OR fluoroalkyl OR PFOA OR APFO OR NaPFO OR PFNA OR C8 OR "C-8" OR "C 8" OR C9 OR "C-9" OR "C 9" OR DFS1 OR "DFS-1" OR "DFS 1" OR DFS2 OR "DFS-2" OR "DFS 2" OR RC8 OR "RC-8" OR "RC 8" OR FC143 OR "FC-143" OR "FC 143" OR FC2000 OR "FC 2000" OR "FC-2000" OR FC118 OR "FC-118" OR "FC 118" OR FC1094 OR "FC-1094" OR "FC 1094" OR FC75 OR "FC-75" OR "FC 75" OR ATC603 OR "ATC 603" OR "ATC-603" OR Fluorad)

Additionally, to the extent any Community Right to Know surveys hit on one of the over 1,000 combinations of EID/CC's custodial ESI search terms, EID/CC will produce those documents that are responsive and non-privileged as it results to PFOA or PFNA. But Plaintiffs have not identified any basis for EID/CC to conduct independent collections to locate, review, and produce duplicative, publicly available surveys for an indefinite and unknown period of time, and the Court should deny Plaintiffs' attempt to re-litigate this issue. Plaintiffs are also not entitled to all drafts and communications about the surveys.

**Plaintiffs' Reply:** By way of compromise, Plaintiffs propose that EID/CC provide all Community Right to Know surveys which refer to the chemicals at issue PFOA, PFNA, and all synonymous names.

### d.   Dates of Search

DuPont proposes to stop its searches on July 8, 2020. Plaintiffs have asked that the searches be continued to April 1, 2022. Given ongoing litigation and regulatory investigations involving Du Pont, it likely has information after 2020 which discusses the health impacts of exposures to the chemicals of interest, as well as soil and water sampling, communications with government entities, and the like. The imposition of artificial limits on the time period of discovery is incompatible with case law. *See e.g. Prudential New York Theatres Co. v. Radio City Music Hall Corp.*, 271 F. Supp. 762, 763 (S.D.N.Y. 1967); *Zatko v. Rogers Mfg. Co.*, 37 F.R.D. 29, 32 (N.D. Ohio 1964) both holding that the time period for which discovery must be provided depends on the issues in the case. It is also inconsistent with the duty to amend discovery responses. *Fed. R. Civ. P.* 26(e).



*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

**EID/CC's Position:** EID/CC has agreed to search custodial ESI through July 8, 2020 (which is the date of the first filing of Complaints in the Group 2 cases, the K. Bond matter). Parties routinely end ESI custodial searches at the time the complaint was filed given that it is impractical to repeatedly renew ESI collections and because of the increased burden of logging privileged documents after a complaint is filed. *See, e.g., Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*, No. 16-CV-3181 (MKB) (CLP), 2019 WL 12518712, at *3 (E.D.N.Y. Dec. 4, 2019) (noting that the court defined the relevant time period for discovery as the "date of the filing of the Complaint" because it would not be proportional to require production of documents "since the filing of the Complaint"). Plaintiffs have provided no basis for EID/CC to do otherwise here, and EID/CC cannot continually re-collect data from individual sources.

To be clear, EID/CC has agreed to produce key categories of non-custodial documents after this date, including stored data for certain environmental sampling related to Chambers Works as it relates to PFNA and PFOA, which has already been produced as described above.

To the extent Plaintiffs request ESI searches beyond July 8, 2020, which is many years after EID/CC stopped using PFOA as a polymerization processing aid at its Chambers Works Facility, EID/CC respectfully asks the Court to shift the cost of all collection, processing, review, and production of these searches to Plaintiffs. *See, e.g., Major Tours, Inc. v. Colorel*, No. 05-3091, 2009 WL 3446761, at * 6 (D.N.J. Oct. 20, 2009) (ordering plaintiffs to pay costs of searching and reviewing backup tapes to the extent "plaintiffs insist that the search be done"). Additionally, the parties' ESI Protocol in this matter allows for cost shifting (*See* Stipulated Order Establishing Document and Electronically Stored Information Production Protocol at "V. 1. **Costs.** The cost of preserving, collecting and producing documents shall be borne by the Producing Party. In the event, however, that a Requesting Party requests ESI, documents, or information that would result in the production of cumulative or repetitive discovery that otherwise imposes an undue burden or expense upon a Producing Party, the Producing Party may object. The Parties shall work to resolve any such objection. In the event the Parties are unable to resolve such an objection, and upon substantiation of that objection in writing by the Producing Party, the Producing Party may move the Court for an order shifting the cost of producing such discovery to the Requesting Party.")

**Plaintiffs' Reply:** Plaintiffs propose that EID/CC run a test search for documents between July 8, 2020 and April 1, 2022 and provide a list of the documents returned, so that the parties can understand how many documents were created in this time period. This undertaking should not be significant since EID/CC is searching the file of only one current employee, Scott Northey. If few documents were created, this request will likely be moot. If there are many, documents that are not confidential, e.g. those that are publicly filed or used in other litigation, can be turned over without any review by EID/CC. If the list contains a large number of non-public documents or those not used in other litigation, the parties can confer further on what documents should be provided.



*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

C. **Solvay**

a. **Request to add Community Right to Know Surveys**

**Plaintiffs' Position**: Plaintiffs have requested, and Solvay has refused to add the following search and synonymous terms: "Community Right to Know" survey (which list the types and quantities of chemicals present at Solvay's West Deptford facility) in order to obtain all such surveys, survey drafts, and documents which discuss Community Right to Know surveys. Solvay has advanced the following objections: (1) the Court has already denied this request; (2) the surveys are unnecessary because Solvay has provided Plaintiff with the amount of Surflon and NaPFo used by Solvay at the West Deptford facility.

Plaintiffs believe that the Court's ruling on the Community Right to Know surveys was in response to counsel's effort to obtain this information in order to facilitate a prompt amendment to Plaintiffs' Complaints. Plaintiffs do not believe that the Court ruled that discovery of these surveys is not permitted. This discovery is relevant for the reasons discussed above with regard to Du Pont and, for the reasons discussed above, it does not suffice for Plaintiffs to obtain this information from the DEP.

In addition, the State of New Jersey Department of Environmental Protection in *New Jersey etc. v. Solvay Specialty Polymers USA*, GLO-L-001239-20 has questioned the candor of Solvay: ¶ 14 ("Solvay has repeatedly sought to blame others"; "Solvay also has refused to comply with the Department's numerous directions to investigate all contamination pathways") and ¶ 15 ("Solvay . . . has hidden much of its activity regarding these compounds from the Department and from public view.") https://www.nj.gov/oag/newsreleases20/Solvay-Complaint.pdf nt.pdf (nj.gov) (last visited April 18, 2022). Others have made similar allegations. Microsoft Word - EPA_Enforcement_request_1-26-2021.docx (ewg.org) While Solvay may have provided Plaintiffs with quantity information in discovery, Plaintiffs are entitled to verify this information and the Community Right to Know survey should be provided to permit Plaintiffs to do so.

**Solvay's Position**: Plaintiffs once again ask the Court to require Solvay to produce 30 years of publicly available Community Right to Know submissions, including those without any mention of PFNA or PFOA, that Plaintiffs want to use in their fishing expedition for information to support claims that Judge Hillman has expressly dismissed.[2] But the Court already denied this

---

[2] *See* K. Bond, Dkt. 184 at 22 (dismissing claims to "toxins" other than PFNA and PFOA because "Plaintiffs have not plead the nature of other toxins with enough specificity to state a plausible claim").

11

request at the February 22 status conference and should do so again. *See* Feb. 22, 2022 Hearing Tr. at 29:21-30:19.

Plaintiffs offer no explanation for why they have failed to obtain these publicly available documents in the two months since the Court denied their last request for them.[3] Plaintiffs argue that the fact that these documents are publicly available is of no consequence here, but the cases they rely on are distinguishable. *Shatsky* and the cases cited therein stand for the proposition that courts "have compelled parties to produce relevant, publicly available materials **that *they* intended to use to bolster *their* claims or defenses**." *Shatsky*, 312 F.R.D. at 224 (emphasis added). Similarly, in *Transamerica Life Insurance Company*, 255 F.R.D. at 652, the court excluded as trial exhibits three publicly available documents that plaintiff failed to produce in discovery but sought to admit at trial in support of ***its own*** case. There is no requirement that parties produce publicly available documents of this volume and burden that are irrelevant to the surviving claims in the case.

Nor have Plaintiffs identified any reasonable justification for requiring Solvay to conduct separate searches for these materials. Indeed, Plaintiffs' new purported basis for seeking these documents is to use the non-PFOA and non-PFNA chemicals included in the submissions as a proxy for PFOA and PFNA to identify Solvay's "fingerprint." But the Court already rejected this logic at the March 17 conference when, in refusing to require Solvay to run non-PFAS-related ESI search terms proposed by the Group 1 Plaintiffs, it stated that, absent an expert report or testimony, information about chemicals not at issue in these cases is irrelevant to understanding the migration of PFNA and PFOA. *See* Mar. 17, 2022 Hearing Tr. at 21:20-22:10. Moreover, to the extent Plaintiffs attempt to claim the surveys are relevant to PFNA or PFOA, Solvay has already produced, and specifically identified to Plaintiffs by bates number, documents submitted to NJDEP showing the amount of Surflon and NaPFO used by Solvay at the West Deptford Facility by year, establishing the time period for which Solvay used PFOA and PFNA. Solvay has also agreed to produce MSDS/SDS for Surflon and NaPFO to the extent located after a reasonable search. Plaintiffs' claim that these documents are necessary to test the "veracity" of Solvay's statements and productions is incorrect; they have extensive requests which will result in voluminous searches and productions—in addition to depositions—against which Plaintiffs will have sufficient opportunities to test the "veracity" of Solvay's statements and productions.

---

[3] Plaintiffs' claim that they must be produced rather than obtained through an OPRA request because there would otherwise be admissibility concerns is facially non-sensical. Records from OPRA requests are frequently used in litigation and can be admitted in litigation so long as they satisfy the requirements under the Federal Rules of Evidence.



*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

To be clear, to the extent any Community Right to Know surveys hit on Solvay's custodial ESI search terms, Solvay will produce those documents.[4] But, Plaintiffs have not identified any basis for Solvay to conduct independent collections to locate, review, and produce duplicative, publicly available surveys, and the Court should deny Plaintiffs' attempt to re-litigate this issue.

**Plaintiffs' Reply:** Plaintiffs seek Community Right to Know surveys, drafts of those surveys and documents which mention the surveys provided they include either PFOA or PFNA. Plaintiffs are no longer requesting Community Right to Know surveys that do not mention the chemicals at issue. Plaintiffs have not sought Community Right to Know surveys from the DEP yet because the parties did not agree on the terms of an Open Public Records Act request. In any event, for the reasons discussed above, the DEP would not have drafts or other documents discussing those surveys. To reiterate, Plaintiff, by way of compromise, only seek Community Right to Know surveys which include references to the chemicals at issue.

      **b.**      **Additions to search String 11 and 12:**

**Plaintiffs' Position**: Solvay's search strings 11 and 12 read as follows:

Search string 11:

> (custodian_view::"Ellerbusch, Fred" OR custodian_view::"Hubert, Ginny" OR custodian_view::"McMichael, Carrie") AND ((Environmental Protection Agency) OR "EPA" OR "USEPA") AND ((PFAS OR PFOA OR AFFF OR PFNA OR "perfluorononanoic acid" OR "perfluoroo-ctanoic acid" OR Surflon OR NaPFO) AND (contamina* OR quality OR discharge OR certification OR regis*)) AND (NOT ("BNA Exhibit (c)Highlights" OR "FEDREGTOC-L@LISTSERV.ACCESS.GPO.GOV" OR "ACGIH Publications" OR "Industrial Hygiene News" OR *law360.com OR "American Law Institute CLE" OR *nl.blr-news.com))

---

[4]    Plaintiffs are now claiming that they are entitled to every draft and communications surrounding these surveys, which goes miles above and beyond their initial requests. To the extent Solvay's custodial ESI searches identify any such responsive, non-privileged documents related to PFNA or PFOA, Solvay will produce them. But Plaintiffs are not entitled to an independent search for 30 years of surveys, in addition to all drafts and communications about them.

13



The Honorable Anne Marie Donio, USMJ
April 18, 2022

Search string 12:

    (*dep.state.nj.us OR *dep.nj.gov) AND (PFAS OR PFNA OR PFOA OR "perfluorononanoic acid" OR "perfluorooctanoic acid" OR Surflon OR NaPFO)

Plaintiffs have requested that Solvay add "or Department of Environmental Protection," or "NJDEP" or "DEP "to both search strings. While documents which mention the EPA (search string 11) are relevant, so are documents which mention the DEP and the Department of Environmental Protection. While emails to the DEP are relevant (search string 12), it is highly likely that Solvay has internal documents that were not emailed to the DEP that mention the DEP and the chemicals at issue. This information is relevant to assessing the scope of the contamination and given the State's concern with Solvay's candor, they are also relevant to test Solvay's assertions in discovery. Other Defendants have agreed to this request. See Du Pont's search terms, Exhibit A, string 4.

**Solvay's Position**: Solvay has already agreed to run more than 175 search strings, including over 90 unique strings requested by the Group 2 Plaintiffs beyond what was agreed to in the Groups 1, 3, and 4 cases. In addition, as shown in the red text above, Solvay has already agreed to significantly expand the scope of both search string 11 and search string 12.

Plaintiffs' request that Solvay add DEP search terms to string 11 ignores that separate strings have been drafted to target EPA documents (string 11) and NJDEP documents (string 12) based on Solvay's own term testing and review. As a result, Plaintiffs' proposal to simply add in NJDEP terms to search 11 (the EPA search), does not make sense as the other terms in the string are all related to EPA searches.

Plaintiffs' request to add additional NJDEP search terms to string 12 is overly broad and unduly burdensome. Contrary to Plaintiffs' suggestion, Solvay does not intend to target NJDEP communications solely through the single search string 12 set forth above. Not only has Solvay included additional ESI search terms to target relevant NJDEP documents, including but not limited to the terms "Direct Oversight" and "ARRCS," but Solvay has also agreed to broad search terms related to PFAS emissions and discharges and has adopted language specifically proposed by Plaintiffs to expand certain of these terms. For example, Solvay has agreed to run each of the following search terms (with Plaintiffs' edits in red below) as well as more than 20 other terms targeted at similar use and discharge issues:

| Term 5 | (APFN w/10 (discharge* OR emiss* OR leak* OR contamin* OR escap* OR pollut* OR migr* OR releas* OR spill)) AND Leonard |
|---|---|
| Term 6 | (APFN w/10 (water OR soil OR air OR groundwater OR (ground w/1 water) OR stack)) AND Leonard |

*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

| Term 145 | ((PFOA OR PFNA OR "perfluorononanoic acid" OR "perfluorooctanoic acid" OR Surflon OR NaPFO) w/10 (discharge* OR emiss* OR leak* OR contamin* OR escap* OR pollut* OR migr* OR releas* OR spill)) AND Leonard |
|---|---|
| Term 146 | ((PFOA OR PFNA OR "perfluorononanoic acid" OR "perfluorooctanoic acid" OR Surflon OR NaPFO) w/10 (discharge* OR emiss* OR leak* OR contamin* OR escap* OR pollut* OR migr* OR releas* OR spill)) AND Leonard |

In addition, Solvay has agreed to undertake non-custodial collections for both EPA and NJDEP communications to ensure a thorough collection and production. Plaintiffs have offered no explanation as to why, in light of the extensive steps Solvay is taking to collect NJDEP communications both through ESI searches and targeted collections, the requested searches are appropriate.

**Plaintiffs' Reply:** None of the alternative search strings proposed by Solvay is assured to return documents which mention both the DEP and the chemicals at issue. Concededly, documents which contain "oversight" and "ARRCS," along with those which contain certain chemicals in close vicinity to discharge and the like will be returned, but that is a subset of the documents transmitted to DEP that discuss the chemicals at issue.

e. **Dates of Search**

**Plaintiffs' Position**: Solvay will not search custodial ESI beyond November 2020. However, it is probable that the custodians have health related information developed as part of other litigation or developed in connection with product research, as well as information about continuing discharges. As the DEP asserted in its complaint against Solvay, https://www.nj.gov/oag/newsreleases20/Solvay-Complaint.pdf nt.pdf (nj.gov), the latter's "discharges continue through today." (Complaint, ¶ 13) and Solvay has engaged in an ongoing effort to conceal its responsibilities. (Complaint, ¶ 15). For the reasons discussed in Section II(B)(2)(d) above with regard to Du Pont, there is no reason to end Solvay's searches in November 2020.

**Solvay's Position**: Solvay has agreed to search custodial ESI (custodian emails and computers) through November 20, 2020. This is the custodial ESI deadline agreed to with the Group 1, 3, and 4 Plaintiffs and is well after the first Group 2 complaint was filed in early July 2020. Parties routinely end ESI custodial searches at the time the complaint was filed given that it is impractical to repeatedly renew ESI collections and because of the increased burden of logging privileged documents after a complaint is filed. *See, e.g., Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*, No. 16-CV-3181 (MKB) (CLP), 2019 WL 12518712, at *3 (E.D.N.Y. Dec. 4, 2019) (noting that the court defined the relevant time period for discovery as the "date of the filing of the Complaint" because it would not be proportional to require

15

*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

production of documents "since the filing of the Complaint"). Plaintiffs have provided no basis for Solvay to do otherwise here.

To be clear, Solvay has agreed to produce key categories of non-custodial documents after November 2020. These documents include but are not limited to PFNA and PFOA testing data for relevant geographies and NJDEP and EPA correspondence. Plaintiffs have failed to explain why, in light of these agreements, it is also necessary for Solvay to collect, review, and produce custodial ESI after this date.

To the extent Plaintiffs request ESI searches beyond November 20, 2020, which is already months after the first Group 2 cases were filed, 17 years after Solvay stopped using NaPFO as a process aid at its West Deptford Facility, and 10 years after Solvay stopped using Surflon as a process aid at its West Deptford Facility, Solvay respectfully asks the Court to shift the cost of all collection, processing, review, and production of these searches to Plaintiffs. *See, e.g.*, *Major Tours, Inc.* v. *Colorel*, No. 05-3091, 2009 WL 3446761, at * 6 (D.N.J. Oct. 20, 2009) (ordering plaintiffs to pay costs of searching and reviewing backup tapes to the extent "plaintiffs insist that the search be done").

**Plaintiffs' Reply:** Plaintiffs propose that Solvay run a test search for documents between November 20, 2020 and April 1, 2022 and provide a list of the documents returned, so that the parties can understand how many documents were created in this time period. Solvay is only proposing to search 7 the electronic files of 7 current employees, so the search effort should be relatively minor. If few documents were created by these 7 employees since November 2020, this request will likely be moot. If there are many, documents that are not confidential, e.g. those that are publicly filed or used in other litigation, can be turned over without any review by Solvay. If the list contains a large number of non-public documents or those not used in other litigation, the parties can confer further. Without a test search it is not possible to gauge the significance of this dispute.

### III.     Defendants' ESI Search Terms to Plaintiffs

**Defendants' Position:** Defendants jointly sent all Group 2 Plaintiffs a proposal on ESI search terms for Plaintiffs to search their ESI. These are the same terms that the Group 1 Plaintiffs have agreed to run against their files. Defendants have not received a response from Plaintiffs yet.

**Plaintiffs' Position**: Plaintiffs' received Defendants' search terms on April 15, 2022 and will hopefully review them by the time of the conference, but there is not sufficient time to do so and include the results of that review in this letter.

16

*The Honorable Anne Marie Donio, USMJ*
*April 18, 2022*

Respectfully submitted,

**SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.**

<u>s/Arnold C. Lakind</u>
  Arnold C. Lakind, Esq.