**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

KIMBERLY BOND AND RICHARD
BOND, INDIVIDUALLY, and AS
PARENTS AND NATURAL GUARDIANS
OF CHRISTINA BOND,

        Plaintiffs,

   v.

SOLVAY SPECIALTY POLYMERS,
USA, LLC, et al.,

        Defendants.

No. 1:20-cv-08487-NLH-AMD

**OPINION**

---

THERESA SLUSSER AND WILLIAM
SLUSSER, INDIVIDUALLY, and AS
PARENTS AND NATURAL GUARDIAN
OF ALEXANDER SLUSSER

        Plaintiffs,

   v.

SOLVAY SPECIALTY POLYMERS,
USA, LLC, et al.,

        Defendants.

No. 1:20-cv-11393-NLH-AMD

---

---

TAMMY O'LEARY and CORBY
DEESE,

            Plaintiffs,

    v.

SOLVAY SPECIALTY POLYMERS,
USA, LLC, et al.,

            Defendants.

No. 1:21-cv-00217-NLH-AMD

---

CARLY CORRAR and SHIRLEY
BOND,

            Plaintiffs,

    v.

SOLVAY SPECIALTY POLYMERS,
USA, LLC, et al.,

            Defendants.

No. 1:21-cv-00452-NLH-AMD

---

SHIRLEY BOND,

    Plaintiff,

v.

SOLVAY SPECIALTY POLYMERS,
USA, LLC, et al.,

            Defendants.

No. 1:21-cv-11203-NLH-AMD

---

**APPEARANCES**:

STEVE PHILLIPS
PHILLIPS & PAOLICELLI, LLP
747 THIRD AVENUE, 6TH FLOOR
NEW YORK, NY 10017

VICTORIA ELIZABETH PHILLIPS
LEVY PHILLIPS KONINGSBERG LLP
800 THIRD AVENUE
NEW YORK, NY 10022

ROBERT E. LYTLE
ARNOLD CARL LAKIND
SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, PC
QUAKERBRIDGE EXECUTIVE CENTER
101 GROVERS MILL ROAD - SUITE 200
LAWRENCEVILLE, NJ 08648

       *On behalf of Plaintiffs.*
THEODORE V. WELLS, JR.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064

       *On behalf of Solvay Specialty Polymers, USA, LLC.*

MICHELLE GITLEN
IRENE HSIEH
MARJAN MOUSSAVIAN
JOHN DAVID NORTH
GREENBAUM, ROWE, SMITH & DAVIS LLP
99 WOOD AVE. SOUTH
ISELIN, NJ 08830

       *On behalf of Arkema, Inc.*

SALVATORE PIETRO D'ALIA
LANNY STEVEN KURZWEIL
RYAN A. RICHMAN
NATALIE SABRINA WATSON
MCCARTER & ENGLISH
100 MULBERRY STREET
NEWARK, NJ 07102

       *On Behalf of E. I. du Pont de Nemours and Company, The
       Chemours Company, and The Chemours Company FC, LLC.*

DONALD J. CAMERSON, II
JAMES WYLIE CROWDER, IV
BRESSLER, AMERY & ROSS, ESQS.
325 COLUMBIA TURNPIKE
PO BOX 1980

FLORHAM PARK, NJ 07932

 *On Behalf of The 3M Company.*

**HILLMAN**, District Judge

 Before the Court is Plaintiffs' motion to amend the complaints in the above captioned related cases.  (No. 1:20-cv-08487-NLH-AMD, ECF 229; No. 1:20-cv-11393-NLH-AMD, ECF 218; No. 1:21-cv-00452-NLH-AMD, ECF 151; No. 1:21-cv-00217-NLH-AMD, ECF 155; No. 21-cv-11203-NLH-AMD, ECF 130).[1]  For the reasons expressed below, the motion will be denied.

<u>BACKGROUND</u>

 The Court incorporates herein by reference the background set out in this Court's opinion on Defendants' motions to dismiss (Opinion on Motions to Dismiss, ECF 184) and Judge Donio's Order on Plaintiffs' motion to amend (Order on Motion to Amend, ECF 267).  Moreover, the Court presumes the parties' familiarity with the factual and procedural background of the instant matters, and therefore will only recount facts salient to the resolution of the remaining issues in Plaintiffs' motion presently before the Court.

 Plaintiffs[2] allege harm resulting from disposal of chemicals

---

[1] For purposes of this opinion, we refer to docket No. 20-cv-08487-NLH-AMD, unless otherwise specified.

[2] Plaintiffs are Kimberly Bond and Richard Bond, Individually and as the Parents and Natural Guardians of Plaintiff Christina Bond

4

including certain poly- and perfluoroalkyl substances ("PFAS")
and other toxins.  (No. 1:20-cv-11393-NLH-AMD, ECF 32 at 3).[3]
Plaintiffs' operative complaints refer to the non-PFAS toxins as
"other toxins," and include certain halogenated hydrocarbons,
heavy metals, freons, industrial alcohols and solvents, mixtures
and other waste, polycyclic aromated hydrocarbons ("PAHs"), and
particulate matter and airborne waste.  (*See, e.g.,* Id.).  In
this Court's opinion deciding Defendants' motions to dismiss, we
noted that despite listing other chemicals, Plaintiffs'
complaints were insufficient to state a plausible claim related
to any substances other than PFNA and PFOA, two specific PFAS
chemicals.  (Opinion on Motions to Dismiss at 21-22).  In
addition, we dismissed Plaintiffs' standalone claim for punitive
damages, but permitted Plaintiffs to proceed with seeking

_____

(the "Bond 1 Plaintiffs"), Kimberly Bond, et al v. Solvay
Specialty Polymers, USA, LLC et al, Civ. Action No. 1:20-cv-
08487; Theresa Slusser and William Slusser, Individually and as
the Parents and Natural Guardians of Plaintiff Alexander Slusser
(the "Slusser Plaintiffs"), Slusser v. Solvay Specialty
Polymers, USA, LLC, et al, Civ. Action No. 1:20-cv-11393; Tammy
O'Leary and Corby Deese (the "O'Leary Plaintiffs"), O'Leary, et
al v. Solvay Specialty Polymers, USA, LLC, et al, Civ. Action
No. 1:21-cv-00217; (the "Corrar Plaintiffs") Carly Corrar and
Shirley Bond Corrar v. Solvay Specialty Polymers, USA, LLC, et
al, Civ. Action No. 1:21-cv-00452; (the "Bond 2 Plaintiff"),
Shirley Bond v. Solvay Specialty Polymers, USA, LLC et al, Civ.
Action No. 1:21-cv-11203.

3 For purposes of this opinion, we primarily cite to the
operative Slusser Complaint and proposed Amended Complaint, as
that is the complaint attached as example to Plaintiffs' motion
to amend.

punitive damages as a form of relief.  (Id. at 24-25).

Plaintiffs filed the instant motion to amend, seeking to revive their allegations related to certain non-PFAS toxins and expand their PFAS allegations.  Plaintiffs narrowed their list of alleged toxins in their proposed amended complaints, which they label "causation chemicals."  (Slusser Proposed Amended Complaint, ECF 229-2 at 14-17).  Their list of "causation chemicals" includes PFAS, lead, mercury, PAHs, arsenic, dioxins, and furans.  (Id.).  From this list, it appears that Plaintiffs seek to expand their PFAS allegations beyond this Court's limitation to PFNA and PFOA to PFAS generally.  (Id. at 15).

In support of their proposed amended complaints Plaintiffs have filed their motion to amend (ECF 229), Declaration of Arnold Lakind (229-1), Proposed Amended Complaint (229-2), and supporting brief (229-4).  Plaintiffs also filed Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion to Amend Complaint.  (ECF 250).  In opposition, Defendants[4] have filed the following: Defendant Solvay Specialty Polymers USA, LLC's Brief in Opposition to Plaintiffs' Motion to Amend Complaints (Solvay

---

[4] Defendants are Solvay Special Polymers, USA. LLC ("Solvay"), Arkema, Inc. ("Arkema"), E. I. du Pont de Nemours and Company ("DuPont"), The Chemours Company, and The Chemours Company FC, LLC ("Chemours"), The 3M Company ("3M").

Opp. Br., ECF 243), Defendant Arkema Inc.'s Brief in Response to Plaintiffs' Motion to Amend Complaints (Arkema Opp. Br., ECF 244), Defendants E.I. du Pont de Nemours and Company, the Chemours Company, and the Chemours Company FC, LLC's Brief in Opposition to Plaintiffs' Motion to Amend Complaints (DuPont and Chemours Opp. Br., ECF 245), Defendant 3M Company's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend (3M Opp. Br., ECF 247), Defendant Solvay Specialty Polymers USA, LLC's Supplemental Brief in Opposition to Plaintiffs' Motion to Amend Complaints (Solvay Supp. Br., ECF 271), and Defendants E.I. du Pont de Nemours and Company, the Chemours Company, and the Chemours Company FC, LLC's Supplemental Brief in Opposition to Plaintiffs' Motion to Amend Complaints (DuPont and Chemours Supp. Br., ECF 272).

On October 27, 2022, Magistrate Judge Donio issued an Order stating that neither undue prejudice nor delay warrant denial of the motion to amend. (Order on Motion to Amend at 3). However, Judge Donio left the issue of futility for this Court to resolve. (Id.).

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs motions to amend a complaint. Rule 15(a) provides that once a party has filed a responsive pleading to the complaint "a party may amend its pleadings only with the opposing party's written consent or

the court's leave."  Fed. R. Civ. P. 15(a)(2).  Leave to amend
is to be freely granted unless there is a reason for denial,
"such as undue delay, bad faith or dilatory motive on the part
of the movant, repeated failure to cure deficiencies by
amendments previously allowed, undue prejudice to the opposing
party by virtue of allowance of the amendment, futility of
amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962); see
also Arthur v. Maersk, 434 F.3d 196, 204 (3d. Cir. 2006) ("Among
the factors that may justify denial of leave to amend are undue
delay, bad faith, and futility.").

     The futility of a proposed amended pleading is evaluated
under the same standard of legal sufficiency as a motion to
dismiss under Rule 12(b)(6).  Travelers Indent. Co. v. Dammann &
Co., 594 F.3d 238, 243 (3d Cir. 2010).  "To survive a motion to
dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## DISCUSSION

     We address the aspects of Plaintiffs' motion to amend that
have not yet been resolved in Judge Donio's opinion.  As such,
we address the question of futility as well as Defendants'
assertions that Plaintiffs impermissibly engage in group
pleading.

## A. Futility

Plaintiffs assert that their proposed amended complaints "have alleged the new exposures with the same level of detail which [this Court] found to be sufficient to withstand a Rule 12(b)(6) motion. Therefore, the allegations are not futile." (ECF 229-4 at 15).

Defendants DuPont, Chemours Solvay, and 3M argue in their respective briefs that Plaintiffs have not cured the issue with causation noted by this Court in its opinion on the motions to dismiss, and that the proposed amendment is futile. (ECF 272 at 5, ECF 243 at 18, ECF 247 at 12).[5]

### 1. Proposed Amendments

We start with a discussion of what is added in the proposed amended complaints, as it is not abundantly clear from the redline versions. Plaintiffs' prior complaints list a number of "dangerous chemicals and substances" that are referred to throughout as "other toxins" (see, e.g., No. 1:20-cv-11393-NLH-AMD, ECF 32 at 3, 11, 15). Plaintiffs' amended complaints narrow the list and switch out reference to "other toxins" with a defined term "causation chemicals." (ECF 229-2 at 14). In addition to "PFAS," these "causation chemicals" include three elements, lead, mercury, and arsenic, as well as three other

---

[5] The arguments raised in Arkema, Inc.'s brief have been resolved by Judge Donio's opinion.

classes[6] of chemicals, dioxins, furans (which are a type of
dioxin), and Polycyclic Aromatic Hydrocarbons ("PAHs").  (Id. at
14-17).

The proposed amended complaint also adds allegations of
DuPont, Chemours, Solvay, and Arkema's use of waste incineration
as a method of waste disposal from the West Deptford facility
and the Chambers Works facility.[7]  (ECF 229-2 at 10, 12, 42).
Plaintiffs do not specify what the waste is that they allege
these defendants incinerate.  They do, however, allege that the
causation chemicals are a byproduct of the incineration process.
(Id. at 47).

While the discussion of the incinerator waste lacks
specificity of what waste is incinerated and what the byproducts
are, Plaintiffs discuss in their description of the "causation
chemicals" that certain of these chemicals are byproducts of
"industrial processes" and "waste incineration."  (Id. at 15-
17).  Plaintiffs describe dioxins as "by-products of various

---

[6] We note that there are hundreds of each these classes of
compound.

[7] 3M argues in their brief that "Plaintiffs' proposed amendments
add *no* additional allegations respecting 3M's sales of any
chemical to any other Defendant or any other allegation linking
3M with other chemicals at the two facilities."  (ECF 247 at
11).  Upon review of the proposed amended complaint, we agree
that Plaintiffs have not plead any claims with respect to the
non-PFAS "causation chemicals" that implicate 3M.  The
allegations against 3M exclusively relate to PFOA and PFNA.

industrial processes and waste incineration.  (Id. at 15).  We can infer that Plaintiffs are alleging the same of furans, as they define furans as "a variety of Dioxin."  (Id. at 15). Plaintiffs state that "PAHs are by-products of industrial processes and especially waste incineration."  (Id. at 17). Finally, Plaintiffs explain that "[a]rsenic is released into the atmosphere from coal fired power plants and incinerators because coal and waste products contain arsenic."  (Id. at 42).  Despite not including waste incineration as a cause of mercury or lead byproduct in the descriptions of the chemicals, Plaintiffs later assert that "it is established scientifically, that the process of incineration necessarily produces *inter alia*, dioxins, PAHs, furans, as well as lead, mercury and arsenic and other PFAS compounds."  (Id. at 47).

In support of their claims that Plaintiffs were exposed to the "causation chemicals" they allege that the "particulate matter" generated by the incineration is carried by "ambient winds" and carried "large distances which easily included Plaintiffs' residences and the surrounding neighborhoods."  (Id. at 43).  Once the incineration waste travels through the air it "will also contaminate the surrounding soil, and also enters the surrounding ground and surface waters" and can also be inhaled and pass into the blood stream.  (Id.).

2. **Proximate Causation**

Each of Plaintiffs' causes of action require a showing of proximate causation in order to plausibly allege a claim.  The issue of proximate causation is often reserved for the jury "[a]s long as the causal link is not too tenuous." Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990).  Plaintiffs' allegations fall short of plausibly pleading causation. Plaintiffs do not plead with sufficient specificity that the "causation chemicals" were actually disseminated and their allegations that Plaintiffs were exposed are conclusory.

Plaintiffs' proposed amendment is futile because they fail to adequately plead that the "causation chemicals" were disseminated from the West Deptford facility or the Chambers Works facility (collectively, "the Facilities").  Plaintiffs ask the Court to infer from the allegation that waste incineration is used at the Facilities, and the fact that the "causation chemicals" can be a byproduct of waste incineration, that these byproducts "travel long distances."  (Id. at 47).  Plaintiffs discuss incineration generally, without any reference to how often the incinerators were used or what kind of waste was incinerated.  (Id. at 42-45).  Thus, their conclusion lacks factual specificity.  Plaintiffs' insistence that "[d]iscovery will no doubt identify additional chemicals" exemplifies the speculative nature of their attempt to implicate these

12

"causation chemicals" in this suit.  (Id. at 13).

Plaintiffs' allegations of exposure to the "causation chemicals" are conclusory.  Plaintiffs state, "even if there [sic] records or monitoring results did not exist to confirm their presence, nonetheless as a matter of well-established physical and chemical and thermodynamic principles their presence may not only be inferred, but are certain."  (Id. at 47).  Unlike the detailed report Plaintiffs relied on in support of their allegations related to PFOA and PFNA, the reports Plaintiffs point to in support of the "causation chemicals" do not provide the same support.

First, Plaintiffs state that "publically available sources dating back as far as the 1970s and continuing forward to the present (e.g., EPA RCRA reports, US Army Engineering Reports, 1976 Director of Chemical Producers, Enforcement Action Excel Reports) have confirmed the presence of the causation chemicals at either the West Deptford or the Chambers Works facilities, or both, as well as in the surrounding community."  (Id. at 47-48).  This general statement fails to connect the alleged chemicals to Plaintiffs' injuries in that it refers to the facilities themselves and vaguely the "surrounding community," but does not sufficiently plead proximity to Plaintiffs.

The Comprehensive RCRA Facility Investigation Report—DuPont Chambers Works Complex, Deepwater, NJ that Plaintiffs site with

data from 2013 does demonstrate the spread of certain chemicals; however, this report is not sufficient to fill the gaps in Plaintiffs' causation argument. (Id. at 48). In describing this report Plaintiffs focus on sampling at Carneys Point. (Id. at 48-49). Plaintiffs Theresa and William Slusser lived in Carneys Point while their son, Plaintiff Alexander Slusser, was in utero in prior to 1996. (Id. at 5). There is an approximately 17-year gap between when the Slussers lived in Carneys Point and when this data was collected and reported. Considering this lengthy gap, allegations that such chemicals existed at Carneys Point at a time when Plaintiffs could have been exposed is speculative.

Next, Plaintiffs explain that "[s]ome incinerator Stack Emission data that is publically available for West Deptford and Chambers Works identify *inter alia* between 2003 and 2022" a list of substances including lead, dioxins, mercury, PAHs, and arsenic. (Id. at 50). Plaintiffs cite to data showing lead and lead compounds at Chambers Works from 2016 to 2020, Benzoperlyene from 2016 to 2016, and other unspecified chemicals in 2003, 2005, 2006, 2007, and 2008, presumably representing the remainder of the listed chemicals. (Id. at 50-51). Again, these references do not include any plausible allegations of exposure.

Finally, Plaintiffs cite to a Perfluoroalkyl Compound

14

Investigation Report from Solvay in 2017 as identifying PFAS contamination. (Id. at 51). Clearly, this does not support allegations related to the non-PFAS "causation chemicals."

In sum, the cited data does not indicate that the alleged "causation chemicals" that were at the facilities traveled to areas where Plaintiffs may have been exposed. The one report that includes location data demonstrating chemical contamination in Carneys Point, is a report from 17 years after the Slusser Plaintiffs lived in Carneys Point. (Id. at 5, 48-49). All other allegations of exposure are conclusory. They assume that if a pollutant was at one of the facilities, it necessarily also travelled across "the community." Plaintiffs do not point to any evidence that these chemicals have been found in proximity to Plaintiffs.

Rather than draw connections between the alleged chemicals and Plaintiffs' residences, Plaintiffs conclude that "even in the absence of contemporaneous testing data, the inevitable consequences of incineration and combustion of the relevant toxins under incontrovertible physical, chemical and thermodynamic principles necessarily produces dispersed incinerator waste containing these causation toxins." (Plaintiffs' Reply Br., ECF 250 at 11) (citation to Proposed Amended Complaint omitted). The allegations that Plaintiffs must have been exposed to the "causation chemicals" because the

15

chemicals have been reported at the facilities at various times, in combination with the fact that the facilities use incineration processes for unspecified waste is conclusory. Such conclusion requires too many assumptions for it to be plausible.  Plaintiffs also make no efforts to connect the timing of the report data with an alleged exposure period related to any specific plaintiff.  While it is certainly possible that chemicals found at the facilities could have been disseminated into the surrounding community through incineration, mere possibility is insufficient the state a claim that withstands the 12(b)(6) standard.

Plaintiffs' conclusion asks to Court to: (1) assume that chemicals that would cause these byproducts were incinerated, (2) that the incineration byproducts traveled to locations where Plaintiffs could have been exposed, and (3) that this happened during time-periods that Plaintiffs were at those locations. Alternatively, Plaintiffs' ask the Court to extrapolate that because certain chemicals were reported at the facilities, again citing seemingly arbitrary time-periods, that the chemicals must have also traveled to locations where Plaintiffs may have been exposed.  Plaintiffs do not support these conclusions with factual allegations specific to these Plaintiffs.

Moreover, Plaintiffs themselves concede the weakness of their allegations.  They explain that while "there were

16

literally thousands of chemicals used and discharged . . . That
does not mean that *all* of these chemicals at all times
proximately caused damage to Plaintiffs." (ECF 229-2 at 14).
Specifically, they concede that "[s]ome [chemicals] were
discharged so long ago in the past and/or in such small
quantities as to render proximate causation improbable." (Id. at
14). Similarly, "[o]thers were discharged *after* Plaintiffs had
suffered injury, rendering causation temporally impossible,
although in some cases, aggravation of previously initiated
injury occurs." (Id. (emphasis in original)). Plaintiffs do
not allege facts that demonstrate that the "causation chemicals"
were discharged in quantities sufficient to render proximate
causation plausible nor a timeline for discharge of the alleged
chemicals that makes proximate causation probable.

As Plaintiffs have not sufficiently plead proximate
causation as it relates to the "causation chemicals," this Court
will deny Plaintiffs' motion to amend the complaints.

## B. Group Pleading

Group pleading "lump[s] multiple, unrelated defendants
together without any explanation regarding how, if at all,
specific defendants were involved with the alleged conduct at
issue." Ingris v. Borough of Caldwell, No. 14-855, 2015 WL
3613499, at *5 (D.N.J. June 9, 2015). In failing to
differentiate between defendants, group pleading "undermines the

17

notice pleading regime of Rule 8." Id. at *6 (quoting Japhet v. Francis E. Parker Mem. Home, Inc., No. 14-1206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014).  Defendants Solvay, DuPont, and Chemours all raise the issue of impermissible group pleading. Solvay asserts that "Plaintiffs' generic allegations fail to adequately plead which purported discharge, if any, of the newly alleged chemicals and chemical classes actually occurred at the West Deptford facility from Solvay's operations."  (ECF 243 at 23).  DuPont and Chemours similarly allege a lack of differentiation between allegations about each defendant, point for example to "Plaintiffs' claim that 'the presence, discharge and dispersion of the causation chemicals at either/or the West Deptford and Chambers Works facilities is not subject to serious dispute.'"  (ECF 245 at 26 (quoting the Slusser proposed Amended Complaint at ¶ 168)).

The first new reference to Defendant Solvay in the amended complaint loops them in with all of the Defendants: "At all relevant times, Defendants DuPont, Chemours, Solvay and Arkema used incineration as a method to discharge and dispose of waste from their Chambers Works and West Deptford facilities." (ECF 229-2 at 42).  Plaintiffs follow this with discussion of incineration and byproducts of the incineration process, as discussed in more detail above.  (Id. at 42-45).  Using slightly more specificity, Plaintiffs assert that lead compounds,

18

mercury, "a variety of PAHs," and arsenic was present at the
West Deptford cite between 2003 and 2022.  (Id. at 50).  It is
worth noting, however, that none of the data sources Plaintiffs
cite are cited in support of the presence of pollutants
allegedly caused by Solvay.  (Id.).  All of the remaining
allegations related to Solvay are either background about the
company and its facility, or related to PFAS.  As such, we
conclude that Plaintiffs engaged in group pleading with respect
to Defendant Solvay as it related to the "causation chemicals."

With respect to allegations against DuPont and Chemours
related to the "causation chemicals" there are more
individualized allegations than there are against Solvay.
Specifically, and contrary to our analysis of Solvay, Plaintiffs
cite to data that is specific to Chemours and to DuPont.  (Id.).
That said, the discussion of the incineration process relies on
group pleading.  As discussed in our analysis of Solvay's claim,
Plaintiffs allege that DuPont, Chemours, Solvay, and Arkema all
used incineration "[a]t all relevant times."  (Id.).  There is
no distinction between defendant nor even between the two
facilities.

While we need not determine whether this group pleading is
sufficient in and of itself to undermine Plaintiffs allegations
related to the "causation chemicals," this impermissible group
pleading provides further support for denying the motion to

amend.[8]

## C. PFAS

We write now to clarify which chemicals remain at issue in
this litigation.  PFAS is a class of chemicals including many
variations.  In our Opinion on the First Motions to Dismiss,
this Court limited the PFAS claim to allegations related to PFNA
and PFOA.  In Plaintiffs' brief in support of their motion to
amend, they characterize our holding as dismissing "claims
arising out of wrongful exposures to chemicals other than PFNA
and PFOS."  (Plaintiffs Br., ECF 229-4 at 7).  While they later
explain that this Court found that "PFNA and PFOA exposures are
adequately plead" (Id. at 15), we take this opportunity to
clarify our position.  Further, amongst Plaintiffs' description
of "causation chemicals" they attempt to broaden their PFAS-
related allegations beyond the limitation to PFNA and PFOA that
this Court imparted in its opinion.  (Slusser Proposed Amended
Complaint, ECF 229-2 at 15).

Plaintiffs did not add any specifics about any other PFAS
chemical aside from the allegations related to PFNA, PFOA, and
PFOS that are consistent with their prior complaints.  We thus
reiterate our limitation.  Plaintiffs may not proceed with their

---

[8] We do not include 3M or Arkema in this discussion as they have
not raised this argument, and we have already determined that
the motion to amend should be denied on other grounds.

claims as it relates broadly to any and all types of PFAS. However, Plaintiffs have sufficiently plead with respect to PFOA and PFNA, as noted in our opinion on motions to dismiss, as well as PFOS.  We had not opined specifically on PFOS in our prior opinion, but note that the same report Plaintiffs relied on in support of their allegations regarding PFNA and PFOA suggest the presence of PFOS as well.  (NJDEP Statewide PFAS Directive, ECF 8-1 at 7, 9).  Thus, Plaintiffs claims survive as they relate to three specific PFAS chemicals, PFNA, PFOA, and PFOS.

**D. Punitive Damages**

In our opinion on the motions to dismiss, we stated that "Plaintiffs' request for punitive damages will be preserved as a request for relief rather than a count."  (Opinion on Motions to Dismiss, ECF 184 at 25).  Accordingly, although we deny Plaintiffs' motion to amend, Plaintiffs are permitted to move forward with their request for punitive damages.

**CONCLUSION**

For the reasons expressed above, Plaintiffs' motion to amend pursuant to Federal Rule of Civil Procedure 15(a) will be denied.

An appropriate order will be entered.


Date: February 27, 2023          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

21